UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MAYA PYSKATY,

                    Plaintiff,

          -against-

WIDE WORLD OF CARS, LLC d/b/a
WIDE WORLD BMW;
BMW BANK OF NORTH AMERICA;

                    Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

15 Civ. 1600 (JCM)

     Plaintiff Maya Pyskaty ("Plaintiff") commenced this action pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* (breach of express warranty and breach of implied warranty of merchantability), New York General Business Law ("N.Y. G.B.L.") § 349 (deceptive acts and practices), N.Y. G.B.L. § 350 (unlawful false advertising), New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-313 (breach of express warranty), N.Y. U.C.C. § 2-314 (breach of implied warranty of merchantability), and allegations of common-law fraud.[1]

     Presently before this Court is a motion by defendant Wide World of Cars, LLC ("Wide World") to dismiss Plaintiff's amended complaint ("Amended Complaint" or "Am. Compl."[2]) against Wide World and defendant BMW Bank of North America ("BMW Bank") (collectively, "Defendants") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

---

[1] This action is before me for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 11).

[2] Refers to Plaintiff's Amended Complaint, Filed as a Matter of Course Pursuant to FRCP 15(a)(1). (Docket No. 12).

12(b)(1). (Docket No. 16).[3]  Plaintiff opposes the motion. (Docket Nos. 30, 31).  For the reasons set forth below, Wide World's motion to dismiss is granted and the Amended Complaint is dismissed in its entirety.[4]

# I.  BACKGROUND

This case arises out of a dispute between Plaintiff and Wide World, "an auto dealership in the business of selling new and used vehicles." (Am. Compl. ¶ 10).  BMW Bank is included as a defendant because of its alleged status as an assignee of a contract executed by Plaintiff and Wide World. (*Id.* ¶¶ 11, 12).

## A.  Facts

The Court assumes the parties' familiarity with the facts in this case.  Accordingly, the Court recites only those facts necessary to resolve the present motion.

On October 31, 2013, Plaintiff and her husband ("Mr. Pyskaty") visited Wide World and discussed the purchase of a certified pre-owned BMW for Plaintiff's personal use. (Am. Compl. ¶ 13).  Plaintiff and Mr. Pyskaty saw a 2010 BMW 750LXI ("the Vehicle"), which was displayed as a certified pre-owned ("CPO") automobile. (*Id.* ¶ 20).  Plaintiff asked a salesperson about the history of the Vehicle and specifically asked if the Vehicle had been in an accident. (*Id.* ¶ 21).  The salesperson "responded that the Vehicle had no accident history, was 'perfect' and

---

[3] Wide World also moved to dismiss the Amended Complaint for lack of diversity jurisdiction. (Docket No. 16 at 2). However, this issue is moot because Plaintiff now concedes that diversity jurisdiction does not exist. (*See* Docket No. 30 at 1 n.1).

[4] BMW Bank has not moved to dismiss the Amended Complaint.  However, because the Court lacks subject matter jurisdiction over this action, I conclude that the Amended Complaint should be dismissed as to BMW Bank as well. *See, e.g., Alkhatib v. New York Motor Grp. LLC*, Nos. CV-13-2337 (ARR), CV-13-5643 (ARR), CV-13-7290 (ARR), CV-13-7291 (ARR), CV-14-2980 (ARR), CV-14-2981 (ARR), 2015 WL 3507340, at *23 n.12 (E.D.N.Y. June 3, 2015) ("NYMG has not moved to dismiss Tuhin's MMWA claim. Because the deficiency in Tuhin's claim identified by M & T Bank applies as well to NYMG, though, I conclude that his MMWA claim should be dismissed in its entirety.").

had a 'clean' Carfax." (*Id.* ¶ 22).  The salesperson also confirmed that the Vehicle had passed the inspection requirements for BMW CPO vehicles. (*Id.* ¶ 25).  Plaintiff thereafter agreed to purchase the Vehicle for $51,195. (*Id.* ¶ 27).

Within the first week of purchase, Plaintiff "noticed that the Vehicle ran rough and vibrated while driving." (Am. Compl. ¶ 29).  Plaintiff later noticed that the Vehicle experienced a number of additional issues: lack of power on acceleration, (*id.* ¶ 42); malfunctioning door locks, (*id.* ¶ 50); engine sluggishness while in reverse, (*id.* ¶ 59); lack of power or hesitation on acceleration, (*id.* ¶ 81); and intermittent loss of power steering, (*id.* ¶ 83).  Plaintiff visited service centers on various occasions in November 2013, January 2014, April 2014, and May 2014, (*id.* ¶¶ 35, 42-43, 45, 53, 59), and she paid for several repairs in an attempt to fix the Vehicle, (*see, e.g.*, *id.* ¶¶ 43-44, 48, 54, 57, 60-62).

In or about June 2014, Plaintiff reached out to BMW of North America ("BMW-NA") to request its assistance in returning the Vehicle for a refund, (Am. Compl. ¶ 64), but BMW-NA told her she would have to speak to Wide World, (*id.* ¶ 65).  Plaintiff returned to Wide World and "indicated her desire to revoke acceptance of the vehicle and arrange for return, rescission, and refund." (*Id.* ¶ 74).  Wide World responded that it would only accept the Vehicle as a trade-in and that it would value the Vehicle at $35,000 for the purposes of trade-in. (*Id.* ¶¶ 75, 76).  Plaintiff declined Wide World's offer. (*Id.* ¶ 77).  At some point Plaintiff became concerned that the Vehicle had been in a prior accident and, on June 12, 2014, Plaintiff obtained an Autocheck report on the Vehicle which indicated that the Vehicle had in fact sustained a rear impact collision on August 24, 2012. (*Id.* ¶¶ 78-80).  Plaintiff took the Vehicle off the road during the summer of 2014, and she has kept it garaged since that time. (*Id.* ¶¶ 83-84).

Plaintiff alleges that the Vehicle has a number of traits that would inform a dealership, but not a layperson, that the Vehicle had been in a major accident. (Am. Compl. ¶ 86). Therefore, according to Plaintiff, Wide World knew that the service history and Carfax report it gave her were "materially inaccurate, incomplete and false at the time provided." (*Id.* ¶ 90). Plaintiff also alleges that Defendants created a "written warranty under their advertised CPO program," (*id.* ¶ 120), and that Defendants breached this warranty because the Vehicle "suffers from significant defects in its condition and . . . was not properly serviced and/or repaired in compliance with the BMW CPO requirements prior to sale," (*id.* ¶ 121).

## B. Claims and Alleged Damages

Plaintiff asserts the following claims in the Amended Complaint: (1) breach of implied warranty of merchantability under the MMWA ("Count I"); (2) breach of express written warranty under the MMWA ("Count II"); (3) breach of express warranty under N.Y. U.C.C. § 2-313 ("Count III"); (4) breach of implied warranty of merchantability under N.Y. U.C.C. § 2-314 ("Count IV"); (5) common-law fraud ("Count V"); (6) deceptive acts and practices under N.Y. G.B.L. § 349 ("Count VI"); and (7) unlawful false advertising under N.Y. G.B.L. § 350 ("Count VII").

In connection with these claims, Plaintiff seeks to recover the following damages: (i) actual damages on all counts, (Am. Compl. ¶¶ 117, 124, 133, 137, 145, 157, 165); (ii) up to $1,000 in treble damages on Count VI, (*id.* ¶ 157); (iii) up to $10,000 in treble damages on Count VII, (*id.* ¶ 165); (iv) punitive damages in an unspecified amount on Counts III, IV, VI and VII, (*id.* at 23 ¶¶ (c), (d); ¶¶ 157, 165); (v) punitive damages of "not less than three times her actual damages" on Count V, (*id.* ¶ 146); (vi) reasonable attorneys' fees, costs, and expenses on

Counts I, II, III and IV, (*id.* ¶¶ 117, 124, 133, 137); (vii) costs and expenses on Count V, (*id.* at 23 ¶ (e)); and (viii) reasonable attorneys' fees and costs on Counts VI and VII, (*id.* ¶¶ 157, 165).

As to actual damages, Plaintiff alleges the following: (i) a diminished value of the Vehicle of approximately $30,717 at the time of sale and approximately $36,330 at the time of suit, (*see* Am. Compl. ¶¶ 94-95, Opp.[5] at 6); (ii) "approximately $3,000" in repairs, (Am. Compl. ¶ 96); (iii) pain and suffering in an unspecified amount, (*id.* ¶ 97); (iv) approximately $8,240 for payments on the Vehicle made during the eight-month period prior to suit when the Vehicle was "undriveable" and kept in a garage, (Am. Compl. ¶¶ 83, 84, 98; Opp. at 6-7); and (v) arguably,[6] an unspecified amount of "insurance expenses" for the same eight-month period, (Opp. at 7).

As to her breach of warranty claims (Counts I, II, III and IV), Plaintiff states that she "is entitled to and reserves the right, at her discretion, to elect cancellation and rescission of the loan in lieu of those actual damages attributable to the vehicle's diminished value." (Am. Compl. ¶¶ 118, 125, 134, 138).

## C. Wide World's Motion to Dismiss for Lack of Jurisdiction

Currently before the Court is Wide World's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction. Wide World argues that this Court lacks jurisdiction because Plaintiff's claims do not meet the MMWA's $50,000 amount-in-controversy threshold.

Wide World puts forth several arguments in support of its motion. First, Wide World claims that Plaintiff is not entitled to a refund under the MMWA because the only warranties at

---

[5] Refers to Plaintiff's Memorandum of Law in Opposition to Defendant Wide World of Cars, LLC's Motion to Dismiss. (Docket No. 30).

[6] Plaintiff does not allege these expenses in the Amended Complaint but merely asserts them in her opposition papers.

issue here are limited warranties. (Motion[7] at 3[8]).  Second, Wide World asserts that Plaintiff's actual damages amount to either $28,022 or $30,717, depending on the figures utilized. (*Id.* at 4). Third, Wide World argues that Plaintiff's "lemon law"[9] claim fails because Plaintiff failed to give Wide World a reasonable opportunity to repair the Vehicle's defects. (*Id.* at 5).  Fourth, Wide World argues that a statutory warranty given under New York's Used Car Lemon Law, N.Y. G.B.L. § 198-a, does not constitute a "written warranty" under the MMWA. (*Id.*).  Fifth, Wide World states that Counts I and IV fail because Wide World did not make or adopt any written warranty. (*Id.* at 5-6).  Sixth, Wide World claims that Plaintiff's surviving causes of action fail to meet the MMWA's $50,000 threshold because Plaintiff cannot include either attorneys' fees or punitive damages in the computation of damages as to those causes of action. (*Id.* at 6).

Plaintiff opposes the motion.  First, Plaintiff argues that she can include damages for state law claims when computing the MMWA's $50,000 requirement. (Opp.[10] at 10-13).  Second, Plaintiff argues that she is entitled to revoke acceptance of the Vehicle and that her revocation amount exceeds $50,000. (*Id.* at 14-15).  Third, Plaintiff argues that the MMWA claims alone exceed $50,000 because she can include punitive damages as to her MMWA claims. (*Id.* at 16-17).  Fourth, Plaintiff claims that Wide World's attempt to disclaim any implied warranties fails because multiple written warranties attach to this transaction. (*Id.* at 17-21).  Fifth, Plaintiff

---

[7] Refers to Wide World's Memorandum of Law. (Docket No. 18).

[8] Wide World's Motion does not contain page numbers.  Therefore, citations refer to the page numbers assigned to the Motion upon electronic filing.

[9] It is unclear to which law this term refers.  The Court notes that Plaintiff does not assert a cause of action under New York's Used Car Lemon Law, N.Y. G.B.L. § 198-a.

[10] Refers to Plaintiff's Memorandum of Law in Opposition to Defendant Wide World of Cars, LLC's Motion to Dismiss. (Docket No. 30).

writes that she did not sue under New York's Used Car Lemon Law, that the MMWA requires an opportunity to "cure," not an opportunity to "repair," and that Wide World had plenty of opportunities to address the issues with the Vehicle. (*Id.* at 21-22). Sixth, Plaintiff argues that her warranty claims should be considered in determining jurisdiction because Wide World's disclaimer of warranties is not effective under New York law and, in any event, does not disclaim anything of importance. (*Id.* at 22-23). Seventh, Plaintiff argues that a purported disclaimer and release does not absolve Defendants from liability for fraud. (*Id.* at 24-26).[11]

Wide World responds with several arguments. First, Wide World concludes that the Amended Complaint must be dismissed in its entirety because the only federal claims (Counts I and II) fail to state a cause of action. (Reply[12] at 4). Wide World argues that Count II must be dismissed because the CPO limited warranty was issued by BMW-NA, not Wide World. (*Id.* at 2). Wide World asserts that Count I must be dismissed because: (i) the CPO limited warranty does not cover Plaintiff's claim that the Vehicle was in a prior accident; (ii) a breach of express warranty by a car manufacturer does not automatically constitute a breach of implied warranty by a car dealership; and (iii) Wide World expressly disclaimed any express or implied warranties. (*Id.* at 2-4). Second, Wide World states that Plaintiff fails to meet the required $50,000 threshold because Plaintiff may not include state law claims, pain and suffering, attorneys' fees, punitive damages, the cost of repairs, or loan payments in her computation of damages under the MMWA. (*Id.* at 4-7). Third, Wide World argues that Plaintiff is not entitled to a "refund" under the MMWA and that, in any event, Plaintiff's refund would be reduced by a

---

[11] As to her fifth, sixth, and seventh arguments, Plaintiff also asserts that Wide World's claims are not susceptible to resolution on a motion to dismiss but addressed them so as "not to . . . waive any arguments." (Opp. at 21).

[12] Refers to Wide World's Reply Memorandum of Law. (Docket No. 33).

reasonable amount of depreciation and therefore would not exceed the MMWA's $50,000

jurisdictional minimum. (*Id.* at 7-8).

## II. DISCUSSION

### A. Federal Question Jurisdiction and the MMWA's Amount-In-Controversy Requirement

Federal district courts have original jurisdiction with respect to "all civil actions arising

under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff

invokes federal jurisdiction pursuant to the MMWA, a federal law authorizing consumers to sue

suppliers, warrantors or service contractors "for damages and other legal and equitable relief" for

failure to comply with any written warranty, implied warranty, or service contract. 15 U.S.C. §

2310(d)(1). An action under the MMWA may be brought in state or federal court. *Id.* However,

the MMWA states that:

> No claim shall be cognizable in a suit brought [in federal court]—
>
> (A) if the amount in controversy of any individual claim is less than the sum or
>     value of $25.00;
> (B) *if the amount in controversy is less than the sum or value of $50,000*
>     *(exclusive of interests and costs) computed on the basis of all claims to be*
>     *determined in the suit;* or
> (C) if the action is brought as a class action, and the number of named plaintiffs is
>     less than 100.

*Id.* § 2310(d)(3) (emphasis added).

A party invoking federal jurisdiction "has the burden of proving that it appears to a

'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."

*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citations

omitted). Courts recognize "a rebuttable presumption that the face of the complaint is a good

faith representation of the actual amount in controversy." *Id.* (citation omitted). To overcome

this presumption, "the party opposing jurisdiction must show 'to a legal certainty' that the

amount recoverable does not meet the jurisdictional threshold." *Id.* (citation omitted).  The "legal certainty" test sets a high bar: "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (citation omitted) (alteration in original).  However, a party may prove "legal certainty" in a case "where recovery is limited by the terms of a contract, where the governing law places limits upon the damages recoverable, [or] where the amount demanded is merely Colorable for the purpose of obtaining jurisdiction." *Novosel v. Northway Motor Car Corp.*, 460 F. Supp. 541, 544 (N.D.N.Y. 1978) (citations omitted).

Here, Plaintiff alleges damages greater than $50,000 on the face of the Amended Complaint, (*see* Section I(B), *supra*), and she has therefore established a "reasonable probability" that the amount in controversy exceeds the MMWA's statutory minimum. However, as set forth below, the Court finds that the governing law limits Plaintiff's recoverable damages, and therefore there is "legal certainty" that Plaintiff will not be able to establish the $50,000 jurisdictional minimum.

**i.  State Law Claims**

Courts disagree on whether state law claims may be considered for the purpose of meeting the MMWA's $50,000 amount-in-controversy requirement. *Compare Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007) ("We may consider this state-law claim in computing whether the amount-in-controversy requirement is met [under the MMWA].") *with Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887-88 (5th Cir. 2014) ("damages for any pendent state-law claims should not be included to satisfy the jurisdictional amount [under the MMWA].") (citation omitted) *and Ansari v. Bella Auto. Grp., Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998) ("We are also [in] agreement with the Fifth Circuit that the amount in controversy for purposes

of [the MMWA] does not include damages flowing from any pendent state law claim brought by a plaintiff.").

The Second Circuit has never examined this issue, and I agree with those courts holding that state law claims may not be included in computing the MMWA's jurisdictional threshold. First, the text of the statute supports such a finding.  On first glance, Subpart (B) of 15 U.S.C. § 2310(d)(3) (stating that the amount in controversy is to be "computed on the basis of all claims to be determined in the suit") appears to include state law claims.  However, when read in context with Subparts (A) and (C) of the same section, "it is apparent that the term 'all claims' . . . most likely refers to the sum of all of the individual MMWA claims contemplated in Subpart (A)." *Critney v. Nat'l City Ford, Inc.*, 255 F. Supp. 2d 1146, 1148 (S.D. Cal. 2003).  Second, the legislative history of the MMWA supports the same interpretation. *See* H.R. REP. NO. 93–1107, at 7724 (1974) (indicating that Congress wanted to avoid having "trivial or insignificant actions" brought in federal court), *as reprinted in* 1974 U.S.C.C.A.N. 7702, 7724.  Indeed:

> [w]ere the § 2310(d)(3) limitation on federal actions read to allow aggregation of the amounts sought in related state claims, Congress's purpose in crafting the section would be thwarted. No longer would there be any difference between the set of MMWA cases cognizable in state court and those allowed in federal court because virtually all such warranty actions would surely include related state claims, particularly fraud claims, which, if allowed to be aggregated with the federal claim, would easily meet the $50,000 requirement. It follows that Congress's clear intent to limit federal jurisdiction over MMWA claims can be given proper effect only by construing the phrase in § 2310(d)(3)—"all claims to be determined in this suit"—to mean "all *MMWA* claims."

*Donahue v. Bill Page Toyota, Inc.*, 164 F. Supp. 2d 778, 782 (E.D. Va. 2001) (emphasis in original).  Third, the concept of supplemental jurisdiction compels this result.  A district court may only exercise supplemental jurisdiction over state law claims if it first has original jurisdiction over a related federal cause of action or through diversity jurisdiction. *See* 28 U.S.C. § 1367(a).  If the term "all claims" in Subpart (B) included state law claims, "then in those cases

where the MMWA claims are for less than $50,000, the district court would be deriving original jurisdiction from pendent state claims over which it can exercise supplemental jurisdiction only if it has original jurisdiction.  An interpretation that condones such jurisdictional 'bootstrapping' cannot be correct." *Critney*, 255 F. Supp. 2d at 1149.

Therefore, Plaintiff's state law claims will not be considered in determining whether Plaintiff meets the MMWA's amount-in-controversy requirement.

## ii.  MMWA Claims

Accordingly, this Court has jurisdiction only if the damages from the MMWA claims alone constitute $50,000.  In MMWA suits, "damages ordinarily are limited to the difference between the value of the goods accepted and the value they would have had if they had been as warranted." *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982) (citations omitted). *See also, e.g.*, *Heiko v. Keil Equip. Co.*, No. 02 Civ. 7570(BSJ), 2004 WL 230991, at *2 (S.D.N.Y. Feb. 5, 2004) (citing *Lieb* and N.Y. U.C.C. § 2-714(2)).  Damages for pain and suffering are generally not recoverable for MMWA claims. *See Wood v. Gen. Motors Corp.*, No. CV 08-5224 (JFB)(AKT), 2010 WL 3613812, at *10 (E.D.N.Y. Aug. 23, 2010), *report and recommendation adopted*, No. 08-CV-5224 (JFB)(AKT), 2010 WL 3613809 (E.D.N.Y. Sept. 15, 2010).  Neither are attorneys' fees. *See, e.g.*, *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) (noting that the MMWA "requires that the amount in controversy be calculated 'exclusive of interests and costs'" and finding that "[a]ttorneys fees are 'costs' within the meaning of [the MMWA]") (citation omitted).

The MMWA is silent on "whether exemplary and punitive damages may be considered with actual damages in order to exceed the requisite amount in controversy." *Novosel*, 460 F. Supp. at 544.  As a general matter, punitive damages claims are subject to heightened scrutiny

when they are being asserted to satisfy an amount-in-controversy requirement. *See Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) ("Indeed, in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.") (citation omitted); *accord KT Exp. v. Wolf Canyon of Am., Inc., USA*, No. 09 Civ. 7123(BSJ), 2010 WL 5249231, at *1 (S.D.N.Y. Dec. 17, 2010). Courts in the Second Circuit have generally declined to consider punitive damages when calculating the MMWA amount in controversy. *See, e.g., Heiko*, 2004 WL 230991, at *2; *Alkhatib*, 2015 WL 3507340, at *24; *Lieb*, 538 F. Supp. at 133.

However, it is clear that punitive damages are recoverable under the MMWA if they would be recoverable in a breach-of-warranty action brought under governing state law. *See, e.g., Rosen v. Gupta*, No. 99-7226, 2000 WL 639964, at *1, *2 (2d Cir. May 17, 2000) (summary order) (affirming magistrate and district court opinion noting that "punitive damages are only recoverable under [the MMWA] if they would be recoverable in a breach of warranty action brought under governing state law."); *Wood v. Maguire Auto. LLC*, No. 5:09-CV-0640 (GTS/GHL), 2011 WL 4478485, at *3 (N.D.N.Y. Sept. 26, 2011) (citing *Rosen*), *aff'd sub nom. Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order).  Under New York law, "[a] claim for punitive damages stemming from a breach of warranty is judged by the same standard for punitive damages arising from a breach of contract." *Mayline Enterprises, Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 313 (S.D.N.Y. 2009) (citation omitted).  The standard for awarding punitive damages when a claim arises from a breach of contract is "'a strict one,' and this extraordinary remedy will be available 'only in a limited number of instances.'" *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994) (citations omitted).  The New York Court of Appeals summarized this standard as follows:

> [T]he pleading elements required to state a claim for punitive damages as an
> additional and exemplary remedy when the claim arises from a breach of contract
> . . . . are: (1) defendant's conduct must be actionable as an independent tort; (2) the
> tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon* (10
> NY2d 401, 404–405, *supra*) (sic) [*i.e.*, the breach of contract must also involve a
> fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton
> dishonesty as to imply a criminal indifference to civil obligations"]; (3) the
> egregious conduct must be directed to plaintiff; and (4) ***it must be part of a pattern
> directed at the public generally.***

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (N.Y. 1995) (emphasis added) (citations omitted). In determining whether conduct is "directed at the public generally," New York law distinguishes "between 'a gross and wanton fraud upon the public' and 'an isolated transaction incident to an otherwise legitimate business.' . . . [implying that] [t]he latter . . . would not constitute conduct aimed at the public generally." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005) (quoting *Walker v. Sheldon*, 179 N.E.2d 497, 500 (N.Y. 1961)). *See also id.* at 94 (noting that *Rocanova* and *New York University* made it "clear that punitive damages were recoverable in a contract action [under New York law] only 'if necessary to vindicate a public right.'") (citations omitted); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 371 (W.D.N.Y. 2013) (Under New York law, "punitive damages for the breach of contractual obligations, such as express warranties, are generally unavailable unless necessary to vindicate a public right.") (citations omitted).

Here, Plaintiff alleges that she purchased the Vehicle for $51,195[13] and that, at the time of the sale, the Vehicle was actually worth approximately $20,478. (Am. Compl. ¶ 94). Therefore, using the ordinary formula outlined in *Lieb*, 538 F. Supp. at 133, *supra*, Plaintiff has

---

[13] Wide World claims that the purchase price of the Vehicle was actually $48,500. (Affirmation of Keith V. LaRose ¶ 15) (Docket No. 17). The Court need not resolve this dispute because the Court does not have jurisdiction regardless of whether the purchase price was $48,500 or $51,195.

alleged actual MMWA damages of approximately $30,717.  This is clearly insufficient to meet the MMWA threshold.

Plaintiff also seeks to amend the Amended Complaint to add punitive damages to her MMWA claims. (*See* Opp. at 17 n.4).  However, Plaintiff could not use such proposed punitive damages to meet the MMWA minimum because Wide World's alleged conduct is more akin to "an isolated transaction incident to an otherwise legitimate business" than "a gross and wanton fraud upon the public." *TVT Records*, 412 F.3d at 95 (citation omitted).  In other words, punitive damages are not "necessary to vindicate a public right" in this case, as required by New York law. *Id.* at 94 (citations omitted). *See, e.g.*, *Mayline*, 641 F. Supp. 2d at 312 (rejecting plaintiff's argument "that the fraud was directed at the general public . . . because the truck was held out for sale to the general public with an altered odometer" and holding that plaintiff could not recover punitive damages under New York law because plaintiff proved "only a single incident of odometer alteration"); *Stegich v. Saab Cars USA, Inc.*, 676 N.Y.S.2d 756, 756 (N.Y. App. Term 1998) (holding that plaintiff was not entitled to punitive damages in case involving dealer's failure "to disclose a presale repair to the plaintiff's Saab automobile" on the grounds that "Plaintiff's general assertion that he was 'only one of many members of the public who entered the defendant [dealer's] showroom to purchase a 'new' car', is hardly sufficient to sustain a finding that defendants' conduct constituted a public wrong.") (alteration in original).  Where, as here, punitive damages are unavailable under New York law, they should not be included in calculating the amount in controversy for jurisdictional purposes. *See Enobakhare v. Carpoint, LLC*, No. 08 CV 4798(ARR), 2011 WL 703920, at *13 (E.D.N.Y. Jan. 10, 2011) (citation omitted), *report and recommendation adopted*, No. 08-CV-4798(ARR)(CLP), 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011) ("plaintiff's demand of $3,000,000 in punitive damages should not be

considered in calculating the amount in controversy requirement because punitive damages are not permitted in these circumstances under New York law.").

Accordingly, the alleged damages from Plaintiff's MMWA claims alone fail to satisfy the MMWA's $50,000 amount-in-controversy requirement.

### iii.  Revocation of Acceptance

Plaintiff also argues that she is entitled to revoke acceptance of the Vehicle and that her revocation amount exceeds $50,000. (Opp. at 14-15).[14]

Plaintiff implicitly concedes that she is not entitled to a "refund" under Section 2304 of the MMWA because the only warranties alleged here are limited warranties. (Opp. at 14).  The Court agrees. *See* LaRose Aff. Ex.[15] G; *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 478 n.7 (S.D.N.Y. 2010) ("The federal minimum standards for warranties, set forth in 15 U.S.C. § 2304, do not apply to warranties designated 'limited,' like that which [Defendant] provided to Plaintiff.") (citation omitted).  Moreover, even if Plaintiff were entitled to a refund under the MMWA, the refund amount would almost certainly fail to meet the $50,000 jurisdictional minimum because Plaintiff used the Vehicle for approximately nine months. *See*

---

[14] Plaintiff sometimes uses the term "rescission" as opposed to "revocation of acceptance." (*See, e.g.*, Opp. at 15, Am. Compl. ¶¶ 118, 125, 134, 138).  To the extent Plaintiff is arguing that she is entitled to the equitable remedy of rescission of her loan or her contract with Wide World, this claim also fails to establish jurisdiction.  The Supreme Court has stated that in an action seeking the equitable remedy of declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). *See also DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 276 (2d Cir. 2006) (citing *Hunt*); *Petrucelli v. Palmer*, 596 F. Supp. 2d 347, 354 (D. Conn. 2009) (applying the *Hunt* rule in an action involving rescission).  Here, the "object of the litigation" is the Vehicle, and the value of the Vehicle at the time of suit was less than $50,000. *See* Am. Compl. ¶ 95; 15 U.S.C. § 2301(12) (indicating that any refund for the Vehicle should be modified to account for "reasonable depreciation").  Therefore, even if Plaintiff were entitled to rescission, "this Court [could] conceive of no set of circumstances wherein plaintiff could recover an amount that would satisfy the . . . amount in controversy threshold[.]" *Mastor v. Newman*, No. 08-CV-802, 2009 WL 1706648, at *3 (W.D.N.Y. June 17, 2009).

[15] Refers to exhibits attached to the Affirmation of Keith V. LaRose (Docket No. 17).

Am. Compl. ¶¶ 13, 83-84; 15 U.S.C. § 2301(12) (stating that the term "refund" means "refunding the actual purchase price (less reasonable depreciation based on actual use where permitted by rules of the Commission).").

Therefore, the Court must look to New York state law to determine whether Plaintiff is entitled to revoke her acceptance of the Vehicle. *See Kolle v. Mainship Corp.*, No. 04CV711(TCP)(MLO), 2006 WL 1085067, at *2 (E.D.N.Y. Apr. 20, 2006) ("When a warrantor . . . issues a limited written warranty, the MMWA provides that the Court must look to State law to determine a plaintiff's entitlement to damages or other equitable remedies.") (citations omitted); *Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d 214, 216 (N.Y. App. Div. 2003) ("the MMWA is silent as to the remedies for breach of a limited written warranty. Accordingly, the court must look to State law to determine the plaintiffs' entitlement to damages or other legal or equitable relief") (citations omitted).  Under New York law, revocation of acceptance is available if, in relevant part, the buyer accepted a nonconforming good "whose noncomformity substantially impairs its value to him" and "his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.Y. U.C.C. § 2-608(1). *See also Murphy v. Mallard Coach Co.*, 582 N.Y.S.2d 528, 530-31 (N.Y. App. Div. 1992). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it[.]" N.Y. U.C.C. § 2-608(2).

The Court need not decide whether Plaintiff could revoke her acceptance of the Vehicle because even if Plaintiff could revoke her acceptance, she would not be entitled to a full refund of the Vehicle's purchase price.  Upon revoking acceptance, a party may recover "so much of the price as has been paid[.]" N.Y. U.C.C. § 2-711(1) ("Section 2-711(1)"). *See also, e.g., Federated Retail Holdings, Inc. v. Sanidown, Inc.*, No. 06 Civ. 6119(LTS)(THK), 2010 WL 5298113, at *7

(S.D.N.Y. Dec. 23, 2010) (citing Section 2-711(1) and holding that plaintiffs were "entitled to recover the price paid for the goods that they removed from their stores and returned to Defendant" but "obviously [could] not recover the amount of unpaid invoices"); *Exp. Dev. Canada v. Elec. Apparatus & Power, L.L.C.*, No. 03 Civ.2063(HBP), 2008 WL 4900557, at *18 (S.D.N.Y. Nov. 14, 2008) (citing Section 2-711(1) and holding that counterclaimant was "entitled to the return of its partial payment").

A party revoking acceptance may also recover one of two additional remedies. First, a party may "cover" by purchasing substitute goods and may obtain certain damages incurred thereby. N.Y. U.C.C. §§ 2-711(1)(a), 2-712. However, where a party "did not cover, . . . damages under 2-712 are not available." *Singapore Recycle Ctr. Pte Ltd. v. Kad Int'l Mktg., Inc.*, No. 06-CV-4997 (RRM)(RER), 2009 WL 2424333, at *14 (E.D.N.Y. Aug. 6, 2009), *report and recommendation adopted sub nom. Singapore Recycle Ctr. PTE Ltd. v. Kad Int'l Mktg., Inc.*, No. 06-CV-4997 (RRM)(RER), 2009 WL 2778003 (E.D.N.Y. Sept. 1, 2009). Second, and in the alternative, a party revoking acceptance may "recover damages for non-delivery as provided in [N.Y. U.C.C. § 2-713 ("Section 2-713")]." N.Y. U.C.C. § 2-711(1)(b). Under Section 2-713, a party may be entitled to "the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in [N.Y. U.C.C. § 2-715 ("Section 2-715")] but less expenses saved in consequence of the seller's breach." *Id.* § 2-713. Under Section 2-715, incidental damages "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach," *id.* § 2-715(1), and consequential damages consist of "(a) any loss resulting from

general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty," *id.* § 2-715(2). *See also, e.g.*, *Maxwell v. Crabtree Ford, Inc.*, 543 N.Y.S.2d 626, 630 (N.Y. Just. Ct. 1989) (noting that a buyer who revoked acceptance of a vehicle could "recover the purchase price under Section 2–711 and incidental and consequential damages under Section 2–715.").

Here, Plaintiff "put down a deposit of $2,000," (Am. Compl. ¶ 28), and it appears that she had paid approximately $16,480 in car payments at the time of suit.[16]  Therefore, Plaintiff may be entitled to recover approximately $18,480—"so much of the price as has been paid"— under Section 2-711(1).  Plaintiff has chosen not to "cover" by purchasing a replacement vehicle, (*id.* ¶ 98), and therefore damages pursuant to Section 2-712 are not available.  As to damages under Section 2-713, Plaintiff has not alleged "the difference between the market price at the time when the buyer learned of the breach and the contract price," and there is no indication that the market price of the Vehicle (*i.e.*, the market price of a comparable 2010 BMW 750LXI), has changed significantly from the alleged contract price of $51,195. *Cf. Kashi v. Gratsos*, 790 F.2d 1050, 1056 (2d Cir. 1986) (remanding to the district court for additional findings of fact with regard to damages under Section 2-713 where the "market price" of soybean meal was determined each day by the Chicago Board of Trade).  As to incidental and consequential damages under Section 2-715, Plaintiff may be able to recover the "approximately $3,000" she spent attempting to repair the Vehicle, (Am. Compl. ¶ 96), and she arguably could recover "insurance expenses" for the eight-month period prior to suit when the Vehicle was

---

[16] Plaintiff alleges monthly car payments of $1,030. (Am. Compl. ¶ 98).  She purchased the Vehicle on or about October 31, 2013, (*id.* ¶¶ 13, 27), and filed suit on March 4, 2015, (Docket No. 1).  Therefore Plaintiff had made approximately sixteen monthly car payments at the time of suit.

"undriveable" and kept in a garage, (*id.* ¶¶ 84, 98; Opp. at 7).  However, even assuming Plaintiff could recover such expenses, her alleged damages under Section 2-715, together with the approximately $18,480 in alleged damages recoverable under Section 2-711(1), would not amount to $50,000.

Accordingly, even if she chooses to revoke acceptance of the Vehicle, Plaintiff's claims fail to satisfy the MMWA's $50,000 amount-in-controversy requirement.

## III.  CONCLUSION

For the foregoing reasons, Wide World's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is granted.[17]  The Clerk is respectfully requested to terminate the pending motion (Docket No. 16) and close the case.

Dated:  February 23, 2016
       White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge

---

[17] Because the Court grants Wide World's motion on the grounds outlined in this Opinion and Order, it need not address Wide World's additional arguments for dismissal.