# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MAYA PYSKATY,

                              *Plaintiff,*

         v.

WIDE WORLD OF CARS, LLC, d/b/a
WIDE WORLD BMW;
BMW BANK of NORTH AMERICA,

                              *Defendants.*

Case No. 17-cv-1600(JCM)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Evan S. Rothfarb
Daniel A. Schlanger
SCHLANGER LAW GROUP LLP
9 East 40th St., Suite 1300
New York, NY 10016
T: (212) 500-6114
F: (646) 612-7996
erothfarb@consumerprotection.net
dschlanger@consumerprotection.net

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

PROCEDURAL POSTURE ..................................................................................... 6

STANDARD OF REVIEW ....................................................................................... 7

ARGUMENT ............................................................................................................ 7

I.    Plaintiff Is Entitled to Summary Judgment on Her Magnuson-Moss
      Warranty Act Claims for Breach of Express Warranty Because WWC Did
      Not Follow the Terms of the CPO Program and Submitted a False Vehicle
      Inspection Checklist. ........................................................................................7

II.   Plaintiff Is Entitled to Summary Judgment on Her Magnuson-Moss
      Warranty Act Claim for Implied Warranty of Merchantability and Implied
      Warranty of Merchantability Under the New York Uniform Commercial
      Code Because Wide World of Cars, LLC Falsely Represented that the
      Vehicle Was Certified Pre-Owned and the Good Would Not Pass Without
      Objection in the Trade. ...................................................................................11

III.  Plaintiff Is Entitled to Summary Judgment for Breach of Express
      Warranties Under the New York Uniform Commercial Code for Express
      Warranties. .....................................................................................................12

IV.   Plaintiff Properly Revoked Acceptance of the Vehicle............................14

VI.   Plaintiff Is Entitled to Summary Judgment on Her New York Gen. Bus.
      Law § 350 Claim for Falsely Advertising the Vehicle as Certified Pre-
      Owned. .............................................................................................................18

VIII. BMW Bank is Liable Under the Common Law, New York and FTC
      Holder Rules......................................................................................................22

      CONCLUSION......................................................................................................24

## PRELIMINARY STATEMENT

Plaintiff Maya Pyskaty is an individual consumer who brings suit against an auto dealership, Wide World of Cars, LLC d/b/a Wide World BMW ("WWC"), and its assignee, BMW Bank of North America ("BMW Bank") regarding significant deceptive and unlawful conduct by WWC in connection with Ms. Pyskaty's purchase of a 2010 BMW 750Li with X-Drive automobile (the "Vehicle") on October 31, 2013.

WWC falsely advertised the Vehicle to Ms. Pyskaty and the consuming public as Certified Pre-Owned ("CPO") under the BMW Certified Pre-Owned BMW Vehicle Program ("CPO Program").  However, the Vehicle did not conform to the CPO Program specifications set forth in the Certified Pre-Owned by BMW Center Operations Manual dated March 2013 in effect at the time (the "CPO Manual") and WWC did not follow the CPO Program procedures set forth in the CPO Manual.

The violations included the following:  WWC did not disqualify the Vehicle as ineligible for CPO despite a disqualifying CARFAX report; WWC did not provide the required disclosures regarding existing damage to Ms. Pyskaty; and the Vehicle could not be represented as CPO because WWC did not fully complete the certification process by completing a Statement of Certification (itself which would constitute a false document) before marketing the Vehicle with the CPO designation.

WWC's advertising of the Vehicle was also replete with falsehoods.  The Vehicle was not eligible for the CPO Program because of its documented prior commercial use, yet WWC held the Vehicle out to the consuming public as CPO even before any inspection process had taken place and nearly a year before the CPO process had been completed through a signed Statement of Certification.  Moreover, when the Vehicle was sold to Ms. Pyskaty, despite the

explicit CPO Manual requirements, WWC did not provide Ms. Pyskaty with the required Statement of Certification, copy of the Certified Pre-Owned by BMW Vehicle Inspection Checklist ("VIC"), or a required Pre-Owned Vehicle Disclosure Notice.

After Ms. Pyskaty struggled for months to correct the defective performance of the Vehicle, including multiple features affecting the safety of the Vehicle, WWC provided her with the VIC for her Vehicle.   The VIC for the Vehicle contained multiple falsehoods: (1) it misrepresented the source of the vehicle as BMW FS Off-Lease (when the Vehicle most recently had been purchased from another auto dealer and prior to that from an auction); and (2) it stated that the Vehicle did not have a disqualifying CARFAX or AutoCheck report (which was not true).

Moreover, a WWC receptionist signed the VIC as the Service Advisor and had fully completed Section 1 of the VIC, although she was not qualified to determine whether the Vehicle history disqualified it from certification as CPO.  Additionally, the technician who completed the VIC for the Vehicle did not inspect it for prior accident damage (beyond the categories in the VIC) and did not provide the required Pre-Owned Vehicle Disclosure Notice set forth in the CPO Manual, although he was qualified to make such assessments.

The discovery adduced from WWC reflects that Ms. Pyskaty's experience was far from an isolated incident.  WWC is a BMW dealership that sold approximately 2,700 vehicles in the year 2013, approximately 200 of which were designated as CPO units sold to consumers using the same deceptive practices.

In certifying vehicles as CPO, WWC regularly utilized the same receptionist who signed the VIC for Ms. Pyskaty's Vehicle, holding her out as a Service Advisor in each VIC, but who

lacked the requisite training to complete the Service Advisor section of the VIC pertaining to vehicle history.

Further, in at least twelve other instances, the technician inspecting the vehicles for CPO purposes limited the scope of the inspection to the VIC, never alerting anyone at WWC or the eventual purchaser whether the purportedly CPO vehicles had prior accident damage required to be disclosed under the Pre-Owned Vehicle Disclosure Notice policy of the CPO Manual.  In fact, WWC had no protocol with regard to making required disclosures regarding accident damage despite the explicit full damage disclosure policy set forth in the CPO Manual.

For the purposes this motion for summary judgment, Ms. Pyskaty seeks relief pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq*., for breach of express and implied warranties, New York U.C.C. § 2-313 (breach of express warranty), New York U.C.C. § 2-314 (breach of implied warranty), New York Gen. Bus. Law § 349 (deceptive acts and practices), and New York Gen. Bus. Law § 350 (false advertising).  Her additional claims for implied warranties under the MMWA and New York U.C.C., express warranty under the New York U.C.C., and common law fraud are not appropriately resolved at this procedural juncture and are reserved.

For the reasons set forth herein, Plaintiff Maya Pyskaty respectfully requests that the Court award summary judgment in her favor.

## STATEMENT OF FACTS

The relevant factual history of this matter and evidence pertinent to the disposition of Plaintiff's motion for summary judgment are set forth in the accompanying Plaintiff's Local Civil Rule 56.1 Statement of Uncontroverted Material Facts ("Rule 56.1").  A brief summary of the circumstances leading to the acquisition of the Vehicle are set forth below.

3

Plaintiff Maya Pyskaty sought to purchase a CPO vehicle from WWC.  After locating a prospective vehicle on the Internet, including reviewing the statement from WWC that "Certified-Pre-Owned title is awarded only to those used BMWs that meet our demanding standards and pass a meticulous certification process," she traveled with her husband to purchase the vehicle from WWC.  However, upon arrival, WWC informed Ms. Pyskaty that the vehicle she had seen advertised was no longer available.  Ms. Pyskaty considered a second vehicle, but later declined to purchase it when she learned it was not CPO and was offered on less favorable purchase terms.

Ms. Pyskaty became interested in a third vehicle, which is the Vehicle at issue in this litigation.  WWC offered the Vehicle to Ms. Pyskaty as CPO.  The Vehicle had a Monroney Label indicating it was CPO and Windshield Clings that stated "Certified Pre-Owned by BMW." WWC's salesman told Ms. Pyskaty that the Vehicle had not been in an accident, was "perfect" and had a "clean" CARFAX report.

Based on the representations that the Vehicle was CPO certified and accident free, Ms. Pyskaty purchased the Vehicle from WWC.  As part of the purchase transaction, Ms. Pyskaty and WWC entered into a BMW Financial Services Motor Vehicle Retail Installment Contract – New York ("RIC").  The RIC contains an FTC holder liability notice informing assignees of their potential liability.  BMW Bank has collected upon the RIC from Ms. Pyskaty since the inception of the transaction.

At the time of sale, WWC provided Ms. Pyskaty with a CARFAX report for the Vehicle and a Buyers Guide, including multiple warranties, each signified with a "X" in a checkbox. However, WWC did not provide Ms. Pyskaty with the Statement of Certification for the CPO,

VIC for the Vehicle, or a Damage Disclosure Notice for the Vehicle. Each of these documents is required by the CPO Manual at the time of sale.

After purchase, Ms. Pyskaty experienced significant problems with the Vehicle, including features that called the safety of the Vehicle into question. Ms. Pyskaty attempted to address the multiple deficiencies with the Vehicle, including by incurring out-of-pocket expenses on repairs, yet the Vehicle's performance did not improve.

Ms. Pyskaty subsequently obtained the VIC for the Vehicle from WWC as well as an AutoCheck report with the vehicle history. The AutoCheck report indicated the Vehicle had been in a prior accident.

By June 2014, Ms. Pyskaty had lost confidence in the Vehicle and expressed to WWC that she wanted to revoke and rescind the Vehicle purchase. WWC refused. Ms. Pyskaty subsequently obtained counsel who again expressed to WWC that Ms. Pyskaty wanted to revoke and rescind. WWC again refused.

As the Vehicle was unsafe to operate, Ms. Pyskaty kept the Vehicle in storage since 2014. Nevertheless, she has made all applicable insurance, registration, and loan payments on the Vehicle.

This litigation has uncovered multiple, incontrovertible facts reflecting the fraud that has taken place. First, WWC sold a Vehicle to Ms. Pyskaty identified as CPO that was ineligible for certification under the CPO Manual. The Vehicle had a history of prior commercial use, a disqualifying criterion under the CPO Manual. By falsely certifying the Vehicle, WWC was guilty of a misrepresentation according to the CPO Program itself.

Second, the Vehicle had been damaged prior to sale in one or more accidents. The prior damage was obvious to auto industry professionals, but WWC did not look for evidence of prior

damage or disclose it to Ms. Pyskaty.  Thus, Ms. Pyskaty did not receive any of the disclosures required by the CPO Manual under the full disclosure policy with regard to prior body damage and paint work that had been performed on the Vehicle.

Third, WWC employed an unqualified receptionist to qualitatively evaluate the CARFAX vehicle history reports used for CPO certification and had her sign off falsely as the Service Advisor in VIC documents.  Fourth, the technician who inspected the Vehicle did nothing more than fill out a VIC checklist, although he was qualified to assess whether the Vehicle had sustained prior damage that should be disclosed pursuant to the full disclosure policy in the CPO Manual.  When experts subsequently reviewed the Vehicle, each was able to observe the poor-quality body work and re-painting that had been done on the Vehicle, which was readily apparent to auto industry professionals.

Fifth, WWC marketed the Vehicle to the public more than a year before it completed CPO certification under the strictures of the CPO Manual.  WWC advertised the Vehicle on the Internet and at the dealership location without regard to the fact the CARFAX reports in its possession demonstrated that the Vehicle was ineligible for CPO certification because of its vehicle history.

In sum, WWC's designation of the Vehicle as CPO was false when the Vehicle was sold to Ms. Pyskaty, WWC's process for CPO certification and disclosure did not comport with its obligation under the CPO Manual, and the advertising and sale of the Vehicle to Ms. Pyskaty as CPO was essentially a sham.

## **PROCEDURAL POSTURE**

Plaintiff commenced this action by filing a Complaint on March 4, 2015 (Docket Entry No. 1).  By written Consent to Jurisdiction by a U.S. Magistrate Judge, this matter was referred

6

for all purposes to the Hon. Judith C. McCarthy, U.S. Magistrate Judge (Docket Entry No. 11). Following the filing of the Amended Complaint (Docket Entry No. 12), WWC moved to dismiss (Docket Entry No. 16).   After briefing, the Court granted the motion to dismiss for lack of subject matter jurisdiction (Docket Entry No. 35).  Plaintiff appealed (Docket Entry No. 37) and the United States Court of Appeals for the Second Circuit reversed and remanded (Docket Entry No. 38).

Following remand (Docket Entry No. 40), the parties engaged in discovery, including paper discovery and depositions, as well as expert discovery.  Plaintiff now moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor."  *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003).  The party seeking summary judgment bears the burden of demonstrating to the Court the absence of any genuine factual dispute.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## ARGUMENT

**I.  Plaintiff Is Entitled to Summary Judgment on Her Magnuson-Moss Warranty Act Claims for Breach of Express Warranty Because WWC Did Not Follow the Terms of the CPO Program and Submitted a False Vehicle Inspection Checklist.**

7

The Magnuson-Moss Warranty Act ("MMWA"), also known as the federal "lemon law," is a remedial statute designed "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990) (quoting 15 U.S.C. § 2302(a)).  To achieve these goals, the MMWA permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty [or] implied warranty . . . [to] bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).

The MMWA grants relief to a consumer damaged by the failure of a warrantor to comply with any obligation under a written warranty.  *See Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). Under the MMWA, the term "written warranty" is defined alternatively as:

> (A)  any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (B)  any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6)(A).  Further, although the express warranty definitions in the MMWA may differ from state law (unlike implied warranties under the MMWA), violations of the MMWA rest on breaches of warranties defined under state law. 15 U.S.C. § 2301(6)-(7); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th Cir. 2009); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Courts have held that "the MMWA makes a warrantor directly liable to a consumer for breach of a written warranty," *Diaz v. Paragon Motors of Woodside,*

*Inc.,* 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (citing *Shuldman v. DaimlerChrysler Corp.,* 1 A.D.3d 343, 768 N.Y.S.2d 214, 216 (2003)), and that the MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages," *Ebin v. Kangadis Food Inc.,* No. 13 Civ. 3311, 2013 WL 3936193, at *3 n. 2 (S.D.N.Y. July 26, 2013).

There is no dispute that WWC provided multiple express warranties to Ms. Pyskaty. WWC provided a Buyers Guide to Ms. Pyskaty at the time of sale. This written document identified the Vehicle by VIN and had "X" notations marked next to "LIMITED WARRANTY" and "CERTIFIED PRE-OWNED LIMITED WARRANTY." *See* Plaintiff's Exhibit 26, at 1. This latter notation confirmed that the Vehicle was covered by the CPO Program and certified according to the CPO Manual. CPO certification provides an express warranty based upon state law and it breach also provides a claim under the MMWA. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015).

Additionally, as part of the CPO, WWC also created an additional express warranty insofar as it completed the VIC for the Vehicle. Checklists like this are considered warranties under the MMWA and New York law. *See, e.g., Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 519 (3d Dep't 1984) (pre-delivery inspection form held to be a "warranty" under the MMWA); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193 (3d Dep't 1992) (same).

There is no dispute that WWC sold the Vehicle to Ms. Pyskaty and that WWC presented the Vehicle to her as CPO certified with a CPO warranty. As made clear by Ms. Pyskaty's actions, the CPO warranty was "part of the basis of the bargain." *See* 15 U.S.C. § 2301(6). To wit, Ms. Pyskaty traveled to WWC specifically to purchase a CPO vehicle and had reviewed the advertisement about the extensive CPO procedures. After WWC indicated that the first CPO

vehicle was no longer available, Ms. Pyskaty considered a second vehicle. However, when WWC subsequently indicated that the Vehicle was not CPO, Ms. Pyskaty explicitly rejected it and instead opted for the Vehicle she eventually purchased with the CPO warranty. Thus, the CPO warranty was a critical basis of the transaction.

There is also no genuine issue of material fact regarding whether WWC breached multiple provisions of the CPO Manual. It presented the Vehicle as CPO, but it was not an eligible Vehicle for the CPO Program because of its prior commercial usage. WWC was aware of the prior commercial use when it sold the Vehicle to Ms. Pyskaty as the first purchaser's commercial use was clearly indicated in the CARFAX report generated by WWC that was furnished to Ms. Pyskaty. Moreover, WWC did not even complete the CPO certification process until nearly a year after Ms. Pyskaty purchased the Vehicle and was specifically prohibited from representing the Vehicle as CPO until that process was complete (i.e., there was no Statement of Certification provided to Ms. Pyskaty and it was not completed until October 16, 2014).

Even more glaringly, WWC did not provide Ms. Pyskaty with the disclosures of prior damage for the Vehicle required under the Pre-Owned Vehicle Disclosure Notice. Plaintiff's Exhibit 11, at 19. This section required WWC to disclose "previous paint and body damage repairs . . . or any other such relevant information available to the selling center." *Id.*

Further, the accompanying VIC for the Vehicle misrepresented its origin as BMW-FS Off Lease (which was not true), misrepresented the competency and position of the individual completing Section 1 of the VIC, and misrepresented the CARFAX report as non-disqualifying.

Accordingly, Defendants have breached the express written warranties.

10

II.  **Plaintiff Is Entitled to Summary Judgment on Her Magnuson-Moss Warranty Act Claim for Implied Warranty of Merchantability and Implied Warranty of Merchantability Under the New York Uniform Commercial Code Because Wide World of Cars, LLC Falsely Represented that the Vehicle Was Certified Pre-Owned and the Good Would Not Pass Without Objection in the Trade.**

An implied warranty within the meaning of the MMWA is "an implied warranty arising under State law . . .  in connection with the sale by a supplier of a consumer product."  15 U.S.C. § 2306(7).  This definition encompasses state warranty law, including the implied warranty of merchantability.  *See, e.g., Universal Motors, Inc. v. Waldock*, 719 P.2d 254 (Alaska 1986); *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456 (Ga. Ct. App. 2004).  Under New York's implied warranty of merchantability, as embodied in the N.Y. U.C.C., "[g]oods to be merchantable must be at least such as . . . (a) pass without objection in the trade under the contract description" and "(f) conform to the promises or affirmations of fact made on the container or label if any."  N.Y. U.C.C. § 2-314.

In terms of conformity with descriptive labels, the implied warranty of merchantability operates similarly to express warranties by description.  The goods purchased must conform to their descriptions.  *See Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 216 (E.D.N.Y. 2004) (counterfeit medications that do not conform to the prescription or their labels are not fit for their ordinary purposes); *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 829 F. Supp. 35, 40 (E.D.N.Y. 1993) (non-conforming counterfeit perfume does not conform to the promises or affirmations of fact made on containers or labels).

In Ms. Pyskaty's matter, WWC affirmed that the Vehicle was CPO and was therefore in conformity with the CPO Program.  However, the Vehicle did not conform with its CPO designation.  The Vehicle was disqualified from certification as CPO based on the documents possessed by WWC.  It had evidence of prior commercial use, had not completed the CPO

process, and was missing disclosures regarding previous paint and body repair.  As defined in the CPO Manual, the Vehicle was improperly reconditioned when sold to Ms. Pyskaty.  *See* Plaintiff's Exhibit 11, at 22.

With the above deficiencies, the Vehicle could not possibly pass in the trade without objection.  Further, as noted by all parties' designated experts in this matter -- Mr. Jackson, Mr. Saliani and Mr. Grismer -- the Vehicle had exhibited signs of prior collisions, poor body work, and poor non-factory re-painting apparent upon inspection.

To wit, the Vehicle neither conformed to its description as a CPO automobile, nor would it pass without objection in the trade as a CPO automobile.  Accordingly, WWC breached the implied warranties of merchantability under the MMWA and New York U.C.C.

## III. Plaintiff Is Entitled to Summary Judgment for Breach of Express Warranties Under the New York Uniform Commercial Code for Express Warranties.

Section 2-313 of the Uniform Commercial Code, as adopted in New York, relates to express warranties made by a seller of goods to a buyer, and provides as follows:

(1) Express warranties by the seller are created as follows:

    (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

    (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

    (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement

> purporting to be merely the seller's opinion or commendation
> of the goods does not create a warranty.

N.Y. U.C.C. § 2-313.

An express warranty by description of the goods arises from any description of the goods which can reasonably be considered to have any role in the overall bargain of the parties.  *See Barouh Eaton Allen Corp. v. Cillco, Inc.*, No. 06-CV-1820 DLI/KAM, 2008 WL 465493 (E.D.N.Y. Feb. 15, 2008) (citing N.Y. U.C.C. § 2-313(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.")); *see also Harburger v. Stern Bros.*, 189 N.Y.S. 74 (N.Y. Sup. 1921) ("No particular phraseology is necessary; but there must be an express and direct affirmation of the [k]ind, character, or description of the goods upon which the purchaser relies.").

In order to prevail for breach of an express warranty, a plaintiff must establish that there was an affirmation of fact or a promise by the seller the natural tendency of which was to induce the buyer to purchase.  *See Anderson v. Bungee International Manufacturing Corp.,* 44 F.Supp.2d 534, 541 (S.D.N.Y. 1999). "Such an affirmation of fact must be distinguished from puffery."  *Id.*  Generalized statements and exaggerated claims made by a seller about a product, which a reasonable consumer would not rely upon as a statement of fact, do not create an express warranty.  However, where the seller makes representations of fact about specific characteristics of the product, which were relied upon by the buyer as part of the basis of the bargain, an express warranty is created. *See, e.g., Kates Millinery, LTD., v. Benay-Albee Corp.,* 114 Misc.2d 230 (NY Civ. Ct. 1982), *aff'd* 120 Misc 2d 429 (App. Term, 2nd and 11th Districts 1983).

Under the facts presented herein, it cannot be disputed that WWC made representations concerning the condition and CPO qualifications of the Vehicle that were communicated prior to and during the sale/purchase to Ms. Pyskaty that were reasonably relied upon by Ms. Pyskaty as

part of the basis of the bargain, thus constituting express warranties under NY U.C.C. § 2-313. Further, WWC represented that the Vehicle was CPO in written instruments, including though labels affixed to the Vehicle. *Compare In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) (holding the term "All Natural" on a label was sufficient to create an express warranty under New York law).

As set forth above, the representations made by WWC were replete with falsehoods. The Vehicle was not CPO eligible and WWC had not complied with the CPO Program requirements mandated by the CPO Manual. Accordingly, this Court should find that Defendants have violated the express warranties on the Vehicle under New York law.

### IV. Plaintiff Properly Revoked Acceptance of the Vehicle.

Under both the MMWA and New York U.C.C., the Court must look to New York state law to determine whether Ms. Pyskaty is entitled to revoke her acceptance of the Vehicle. *See Kolle v. Mainship Corp.*, No. 04CV711(TCP)(MLO), 2006 WL 1085067, at *2 (E.D.N.Y. Apr. 20, 2006) ("When a warrantor ... issues a limited written warranty, the MMWA provides that the Court must look to State law to determine a plaintiff's entitlement to damages or other equitable remedies.") (citations omitted); *Shuldman v. DaimlerChrysler Corp.*, 1 A.D.3d 343, 344 (2d Dep't 2003) ("the MMWA is silent as to the remedies for breach of a limited written warranty. Accordingly, the court must look to State law to determine the plaintiffs' entitlement to damages or other legal or equitable relief[.]") (internal citations omitted).

Revocation of acceptance under New York law is available if, in relevant part, the buyer accepted a nonconforming good "whose noncomformity substantially impairs its value to him" and "his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.Y. U.C.C. § 2-608(1); *see also Murphy v. Mallard*

*Coach Co.*, 179 A.D.2d 187, 191–92 (3d Dep't 1992) (setting out the revocation options for a purchaser under the U.C.C., but ultimately permitting the purchaser to elect rescission). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it[.]"  N.Y. U.C.C. § 2-608(2).

Ms. Pyskay timely revoked her acceptance.  As noted repeatedly herein, Ms. Pyskaty did not receive the Statement of Certification, VIC for Vehicle, or the required disclosures of prior accident damage/repair work under the full disclosure policy when she purchased the purportedly CPO-certified Vehicle.  Rather, Ms. Pyskaty struggled for months with a damaged, poorly performing Vehicle that WWC had represented to her as accident free.

As the Vehicle's poor performance became more concerning between November 2013 and June 2014, Ms. Pyskaty took consistent action to repair the Vehicle, including through out-of-pocket expenditures, and she also sought to retrieve the documents which should have been provided to her at Vehicle purchase under the CPO Program.  Once armed with the VIC for the Vehicle and an AutoCheck report demonstrating that the Vehicle had sustained prior collision damage, Ms. Pyskaty repeatedly sought to revoke her acceptance of the Vehicle and unwind the Vehicle purchase transaction with WWC through her counsel.

However, Ms. Pyskaty's efforts to revoke were to no avail.  To the contrary, she has had to keep Vehicle in storage for years while this lawsuit has been pending, pay for the loan on the Vehicle, and bear the costs of insurance and registration.

Accordingly, Plaintiff timely and properly revoked her acceptance of the Vehicle.

**V.  Plaintiff Is Entitled to Summary Judgment on Her New York Gen. Bus. Law §  349 for Deceptive Practices.**

New York Gen. Bus. Law Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commence or in the furnishing of any service in [the State of

New York].” New York Gen. Bus. Law § 349.  GBL § 349 “is a broad, remedial, consumer-oriented statute” that applies “to virtually all economic activity” and provides a private remedy to individuals. *Oswego Laborers’ Local 214 Pension Fund et al. v. Marine Midland Bank,* 85 N.Y.2d 20, 24 (1995); *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999).

A GBL § 349 claim is “set forth where plaintiff alleges consumer-oriented conduct that is deceptive or misleading in a material way, which causes actual injury . . . . A deceptive act or practice has been objectively defined as a representation or omissions . . . likely to mislead a reasonable consumer acting responsibly under the circumstances.” *Marcus v. AT & T Corp.,* 138 F.3d 46 (2d Cir. 1998).  Moreover, reliance is not required to prevail on a General Business Law claim; causation is all that is needed.  *See Oswego Laborers’ Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d at 24.

To assert a claim under GBL § 349, “a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.” *City of New York v. Smoke-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 911 N.E.2d 834, 883 N.Y.S.2d 772 (2009). As applied, insofar as relevant here, an automobile dealership who “chooses to reach out to the consuming public at large in order to promote business” necessarily “subject[s] themselves to the standards of an honest marketplace secured by General Business Law §§ 349, 350.”  *Karlin v. IVF America,* 93 N.Y.2d at 294.

The type of conduct at issue in this Ms. Pyskaty’s action is consumer-oriented, rather than affecting a single individual only, and capable of repetition.  WWC is a BMW dealership that regularly advertises CPO vehicles on the Internet to consumers.  In the year 2013 alone, WWC sold approximately 200 purportedly CPO vehicles, nearly all to individual consumers.

Furthermore, the CPO vehicles are by design labeled and branded specifically to enhance the selling value for WWC.

However, WWC's the process for CPO certification at WWC does not comport with the requirements of the CPO Program and is likely to adversely affect consumers widely in the same way the deficiencies injured Ms. Psykaty.  WWC's process entailed the sale of a purportedly CPO vehicle that did not meet the requirements of the CPO Program, was not fully certified under the CPO Program until nearly a year after the sale, and did not include required damage disclosures.

Moreover, as was the case for Ms. Pyskaty's Vehicle, WWC had an unqualified receptionist fill out the VIC forms and determine whether a given vehicle history report qualified it for CPO.  Furthermore, the technician who looked at the Vehicle never reviewed the it for prior accident damage beyond the VIC (though he was qualified to assess the damage) or completed any form of damage disclosure as required by the full disclosure policy.  Coupled with WWC's furnishment of a "clean" CARFAX to Ms. Pyskaty (that in fact demonstrated the Vehicle was not CPO eligible), Plaintiff was inevitably misled into believing the oral representations of WWC's salesman:  the Vehicle was qualified as CPO and had never sustained accident damage.

Furthermore, Courts around the country have concluded that non-adherence with specific CPO procedures create potential liability under relevant false advertising and deceptive practices statues.  *See, e.g., Quipp v. BMW of N. Am., LLC*, No. 17CV290 DMS (KSC), 2018 WL 3327804, at *2 (S.D. Cal. July 6, 2018) (denying summary judgment for defendant, *inter alia*, on deceptive practices, unfair competition, false advertising, fraud, and negligent misrepresentation claims).

Accordingly, this Court should find that Defendants engaged in deceptive and misleading conduct under General Business Law § 349, and that Ms. Pyskaty, a consumer, suffered injury as a proximate result.

### VI.   Plaintiff Is Entitled to Summary Judgment on Her New York Gen. Bus. Law § 350 Claim for Falsely Advertising the Vehicle as Certified Pre-Owned.

The scope of New York Gen. Bus. Law § 350 is equally broad and prohibits the promulgation of "false advertising in the conduct of any business, trade or commence or the furnishing of any service" in the State of New York.  False advertising is defined as that which is "misleading in a material respect."   GBL § 350(a)[1].  Both GBL § 349 and GBL § 350, "on their face apply to virtually all economic activity," and their application in the courts has been correspondingly broad.  *Karlin v. IVF America,* 93 N.Y.2d at 290; *see, e.g.*, *Perez v. Hempstead Motor Sales,* 173 Misc.2d 710, *aff'd* 176 Misc.2d 314 (Dist. Ct., Nassau Co. 1997) (automotive dealer); *Baker v. Burlington Coat Factory Warehouse,* 175 Misc.2d 951 (City Ct., Yonkers 1998) (clothing retailer).

With regard to the actions and advertisements of WWC, by and through its websites, employees' verbal representations and printed literature, WWC directed and intended to invite consumers, such as Plaintiff, to visit its dealership(s) and purchase their new/used and CPO automobiles.  The materials were deceptive and misleading in a material respect, inasmuch as the Vehicle that Plaintiff was shown and sold was falsely advertised as CPO such that it met CPO Program requirements when, in fact, it did not.

Moreover, much worse than a mere non-disclosure, WWC used and deceptively provided to Ms. Pyskaty a purportedly "clean" CARFAX report in order to mask the Vehicle's prior accident history as a part of WWC's deceptive scheme.   Such actions have been held unequivocally deceptive.

18

Under New York law there is a duty to disclose material information if one party has superior knowledge of certain information, that information is not readily available to the other party, and the first party knows that the second party is acting on the basis of mistaken knowledge. *Banque Arabe v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995). Since WWC knew of the accident damage, or, at a minimum, should have known about it, it had to disclose it. Further, disclaimers are not be given effect "where the facts are peculiarly within the knowledge of the party invoking it". *Id*

Recently, in a fraud context, the Georgia Supreme Court had to address similar misconduct involving a supposedly "clean" CARFAX report. In *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 766 S.E.2d 24 (Ga. S.Ct. 2014) the courts below held that oral misrepresentations, coupled with a supposedly "clean" CARFAX, could not prevail over multiple contractual disclaimers, which included: (1) "NO SALESMAN VERBAL REPRESENTATION IS BINDING ON THE COMPANY", (2) "AS IS NO WARRANTY", (3) "CUSTOMER SHOULD NOTE THAT THIS VEHICLE WAS ANNOUNCED HAVING UNIBODY DAMAGE AT THE AUCTION", and (4) "WE STRONGLY RECOMMEND CUSTOMERS SHOULD GET VEHICLE INSPECTED BY A MECHANIC OF THEIR CHOICE BEFORE MAKING THE PURCHASE." *Id.*

On this record, the court held that a question of fact still existed regarding the reasonableness of plaintiff's reliance: "we cannot say as a matter of law that Raysoni will be unable to show that his reliance on representations that the minivan was undamaged and never had been in a wreck—particularly the written Carfax report—was reasonable." *Id*. at 28; *see also Bishop v. E.A. Strout Realty Agency*, 182 F.2d 503, 505 (4th Cir. 1950) ("There is nothing in law or in reason which requires one to deal as though dealing with a liar or a scoundrel. . . was

never any credit to the law to allow one who had defrauded another to defend on the ground that his own word should not have been believed.").

Accordingly, this Court should find that Defendants engaged in false and misleading advertising under General Business Law § 350, and that Plaintiff suffered injury as a proximate result of the Defendants' conduct.

## VII. Plaintiff Is Entitled to Rescission/Revocation of the Vehicle Sale.

Under the MMWA and New York U.C.C., if Ms. Pyskaty satisfies the requirements for revocation of acceptance, she may elect rescission.  As the Second Circuit expressly concluded in this case: "Under New York law, a plaintiff may obtain rescission – in lieu of actual damages – when a breach of contract is either 'material and willful' or 'so substantial and fundamental' that it 'strongly tend[s] to defeat' the purpose of the contract."  *Pyskaty v. Wide World of Cars, LLC,* 856 F.3d 216, 227 (2d Cir. 2017) (citing and quoting *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998)).

Because it is an equitable remedy, rescission is available where damages would not be a "complete and adequate" remedy and "the status quo may be substantially restored" by equitable relief.  *Id.* (citing and quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13, 280 N.E.2d 867, 874, 330 N.Y.S.2d 33, 43 (1972)).  Similarly, the MMWA itself provides that equitable relief is available to a successful litigant.  15 U.S.C. § 2310(d)(1).

Those requirements are easily satisfied in this matter.  Ms. Pyskaty sought a CPO-qualified vehicle with no prior accident damage.  WWC provided Ms. Pyskaty with a vehicle with a false, incomplete CPO certification and without required disclosures regarding the Vehicle's substantial prior accident history.

WWC willfully ignored its obligations contained in the CPO Manual to disclose known damage and ensure the Vehicle it offered to Ms. Pyskaty met CPO Program requirements. Compliance with CPO Program was the core of contract, which was not met by WWC.

Furthermore, in this matter, Ms. Pyskaty may invoke the remedy of rescission because it is a right granted to her by the warranty itself.  Specifically, the CPO Manual provides a remedy for a purchaser in the circumstances faced by Ms. Pyskaty (i.e., enrollment of an ineligible vehicle in the CPO Program), with a broad scope, inclusive of rescission.  The CPO Manual states:  If an "ineligible vehicle[ is] enrolled in the [CPO] Program[,]" the "Center must advise the customer(s) in writing that the sale as a Certified Program vehicle was incorrect and take whatever steps necessary to satisfy the customer, including repurchase."  Plaintiff's Exhibit 11, at 23.

Critically, the remedy provided by the CPO Manual allocates the final decision-making authority, including the repurchase remedy, to the purchaser AND requires the purchaser's ultimate satisfaction.

Thus, Plaintiff is entitled to elect the equitable remedy of rescission/revocation of acceptance, and thereby elect to declare the purchase agreement at issue "void from its inception" and restore the parties to *status quo* in this action.  *Pyskaty v. Wide World of Cars, LLC,* 856 F.3d at 229 (citing 16 N.Y. Juris.2d, *Cancellation of Instruments* § 1, and *County of Orange v. Grier*, 30 A.D.3d 556, 557 (2d Dep't 2006); *see also Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 194 (3d Dep't 1992) (holding where defendant violated the warranty, plaintiff lost confidence in the vehicle, and plaintiff agreed to relinquish title, Plaintiff was not bound by diminished value and could receive a full refund).

Accordingly, Plaintiff's motion for summary judgment should be granted and rescission granted to Ms. Pyskaty.

## VIII.   BMW Bank is Liable Under the Common Law, New York and FTC Holder Rules.

BMW Bank is the current holder of the BMW Financial Services Motor Vehicle Retail Installment Contract – New York for the Vehicle ("RIC") and is thus liable for the misconduct by the seller under federal, state and common law.  *See* 16 C.F.R. 433.2 (the FTC "Holder Rule"); N.Y. Personal Property Law § 302(9) (state law version of the Holder Rule); *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975).

The FTC Holder Rule and New York State Holder Rule protect consumers when merchants sell a consumer's credit contracts to other lenders.  *See* 16 C.F.R. Part 433; N.Y. Personal Property Law § 302(9).  Specifically, the rules preserve consumers' rights to assert the same legal claims and defenses against anyone who purchases the credit contract, as they would have against the seller who originally provided the credit.  *Id.*; *see also Ramirez v National Coop. Bank (NCB)*, 91 A.D.3d 204, 207 (1st Dep't 2011) ("The Holder Rule and Personal Property Law § 302 (9) preserve consumer claims and defenses by mandating that any holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained)(internal quotations omitted).[1]  Indeed, where an assignee engages in misconduct in its own right, there is direct liability and holder liability becomes superfluous.

In promulgating the Holder Rule, as authorized by Congress, the FTC specifically intended to preserve a consumer's claims and defenses so that they could be asserted against the

---

[1] As the FTC has stated, the Holder Rule "is designed to prevent the widespread use of credit terms which compel consumers to pay a creditor even if the seller's conduct would not entitle the seller to be paid."  41 FR 20,022 (1976).  That is, the FTC Holder Rule specifically "cuts off a creditor's rights as a holder in due course." *Alduridi v. Community Trust Bank, N.A.*, 1999 Tenn. App. LEXIS 718, *8 (Tenn. Ct. App. Oct. 26, 1999).

holder in due course of a loan obligation, even though the holder may not have been a party to any false or deceptive actions taken by the selling dealership, hence the full title of the rule: Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses (The Holder Rule). 16 C.F.R. §§ 433, *et seq.*; *see also* FTC Staff Guidelines on Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses, May 4, 1976, p. 1-2, at https://www.ftc.gov/system/files/documents/rules/holder-rule/760504hidcrule.pdf; 40 Fed. Reg. 53506, 53507 (Nov. 18, 1975) ("The rule is directed at what the Commission believes to be an anomaly. . . . The creditor may assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale.").[2]

The FTC Holder Rule Notice appears on the face of the RIC and states:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSE WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE SELLER.

Pyskaty Decl., Exhibit B.  At the point of assignment from WWC, it was made manifest that BMW Bank accept the RIC subject to all the provisions of the Holder Rule.  BMW Bank accepted the assignment and has received, kept, and retained payments from Ms. Pyskaty ever since.

Accordingly, BMW Bank is liable as the assignee under the common law, New York, and FTC Holder Rules for all the claims asserted against WWC.

---

[2] Even absent the FTC Holder Rule and Personal Property Law § 302(9), both designed specifically to apply to consumer auto financing transactions, BMW would be liable pursuant to N.Y. General Obligations Law § 13-105 (providing that where a claim or demand is transferred, the assignee takes possession "subject to any defense or counter-claim existing against transferrer").  *See also Northern Properties, Inc. v. Kuf Realty Corp.*, 30 Misc. 2d 1, 3 (Westchester 1961) ("it is now beyond dispute than an assignee takes subject to all defenses or counterclaims which the mortgagor possessed against the assignor[.]").

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff Maya Pyskaty respectfully request that this Honorable

Court to grant her motion for summary judgment in this action pursuant to Fed. R. Civ. P. 56.

Dated: August 3, 2018
   New York, New York

          Respectfully Submitted,

          */s/ Evan S. Rothfarb*
          Evan S. Rothfarb
          Daniel A. Schlanger
          SCHLANGER LAW GROUP LLP
          9 East 40th St., Suite 1300
          New York, NY 10016
          T: (212) 500-6114
          F: (646) 612-7996
          erothfarb@consumerprotection.net
          dschlanger@consumerprotection.net

          *Attorneys for Plaintiff*