UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAYA PYSKATY,

                    Plaintiff,

       - against -

WIDE WORLD OF CARS, LLC d/b/a WIDE
WORLD BMW; BMW BANK OF NORTH
AMERICA,

                    Defendants.

Civil Action No.:
7:15–CV–1600 (JCM)

**WIDE WORLD'S LOCAL RULE 56.1(b)
STATEMENT OF UNDISPUTED
MATERIAL FACTS**

Defendant Wide World of Cars, LLC ("Defendant" or "Wide World"), by its attorneys LaRose and LaRose, responds to Plaintiff's statement of material facts and provides additional material facts for which there is no genuine issue to be tried, in opposition to Plaintiff's Motion for Partial Summary Judgment, pursuant to Local Civil Rule 56.1(b). These admissions are made solely for the purpose of the pending motions for summary judgement.

Defendant first states to this Court, that many of the facts put forth by Plaintiff's counsel are *not* material facts. Defendant takes exception to Plaintiff's counsel statement of facts in that he improperly insinuates and interprets documents which speak for themselves, which we contend have a different interpretation. Defendant refers the Court to the documents at issue for interpretation, and to the Declaration of Keith LaRose (hereinafter "LaRose Dec.") being submitted in opposition to plaintiff's motion, for a more detailed explanation as to certain of the disputed facts.

<u>**RESPONSE TO PLAINTIFF'S LOCAL CIVIL RULE 56.1(a)
STATEMENT OF MATERIAL FACTS**</u>

***Background***

1.      Admit only that that this is what Ms. Pyskaty states in her Declaration.

2.     Admit only that that this is what Ms. Pyskaty states in her Declaration, and that she signed all the purchase documents using said name.

3.     Admit.

4.     Defendant lacks the required information to admit or deny.

5.     Admit.

6.     Admit.

7.     Admit.

8.     Deny. Mr. Trontz testified that approximately 75% of the vehicles were generally sold to consumers. *See* **Exhibit "5"** (Trontz deposition) to the LaRose Dec. at pgs. 127-128.

9.     Admit.

10.     Admit.

11.     Deny. Mr. Trontz "guestimated" that Wide World of Cars, LLC d/b/a Wide World BMW ("Wide World") sold 200 Certified Pre-Owned ("CPO") vehicles. *See* **Exhibit "5"** (Trontz deposition) to the LaRose Dec. at pgs. 19-25.

### BMW CPO Program

12.     Admit.

13.     Admit.

14.     Admit.

15.     Admit that the CPO Manual sets forth operating guidelines and some requirements for the CPO Program. *See* Plaintiff's Exhibit 11 attached to the Declaration of Evan S. Rothfarb dated August 3, 2018 (hereinafter "Rothfarb Dec.").For further explanation see the LaRose Dec.

16.     Admit.

17.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only, and disputes plaintiff's statements that certain language in the manual are requirements as opposed to suggestions and/or guidelines. For further explanation see the LaRose Dec.

18.     Admit only that Section 4 is titled "Vehicle Qualification Criteria". But in further responding defendant denies that it contains all the qualification criteria which are contained in other portions of the document. For further explanation see the LaRose Dec.

19.     Admit only that the CPO Manual states this, but that this is a guideline only. For further explanation see the LaRose Dec.

20.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only. For further explanation see the LaRose Dec.

21.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only. For further explanation see the LaRose Dec.

22.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only. *See* Plaintiff's Exhibit 11 attached to the Rothfarb Dec. For further explanation see the LaRose Dec.

23.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only and that "commercial" is not defined. *See* Plaintiff's Exhibit 11 attached to the Rothfarb Dec. Defendant further submits that under the facts of this case the use of the word "commercial" would not be such as to disqualify plaintiff's car from CPO Certification. For further explanation see the LaRose Dec.

24.     Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only. Defendant further states that as this is only a partial quote

from the language, leaving open to interpretation exactly what disqualifies a vehicle from the program. For further explanation see the LaRose Dec.

25.    Admit.

26.    Admit only that the CPO Manual states this, but further responding, defendant states that this is a guideline only. *See* Plaintiff's Exhibit 11 to the Rothfarb Dec. at p. 7. In further response defendant states that other portions of the manual must be referred to in conjunction with determining what is required in the eight steps. For further explanation see the LaRose Dec.

27.    Admit only that the CPO Manual states "[r]un a CARFAX or Experian AutoCheck Vehicle History Report to ensure the vehicle meets CPO enrollment standards."

28.    Admit only that the CPO Manual states "[f]ill out, stamp, sign, and give The Statement of Certification to the Sales Department for presentation to the final retail customer."

29.    Deny that this is a requirement in connection with plaintiff's vehicle as the manual language states that it is mandatory in California which means that it would not be mandatory in other states including New York. *See* Exhibit 11 to the Rothfarb Dec. at p. 7 (indicating that one of items is mandatory in California, which means that it is not mandatory in other states, including New York).

30.    Admit.

31.    Admit.

32.    Admit only that this is a portion of this section. The relevant portions which were omitted are in bold: "Under no circumstances should a vehicle be: 1) processed by the center as Certified, 2) represented to a customer for sale as Certified, or 3) sold as Certified until the center

has confirmed enrollment in the Program (through a DCS Warranty Vehicle Inquiry)." *See* Exhibit 11 to the Rothfarb Dec. at p. 14.

     33.    Deny that this is a requirement and that this is a complete quote of the CPO Manual. *See* Exhibit 11 to the Rothfarb Dec. at p. 17 which reads: "To ensure that a customer who purchases a [CPO] BMW understands the true value of their purchase, it is vitally important that the center present the vehicle to the customer with a full explanation of the [CPO] BMW Vehicle Program's benefits, terms and conditions." This includes presenting to the customer "full disclosure (see Section 9 Pre-Owned Vehicle Disclosure Notice." Defendant further contends that the true interpretation of the language of this Section generally must be seen in light of other provisions of the manual. Defendant in further responding states that it was in full compliance with this Section under the facts of this case when viewed in connection with the other portions of the manual not quoted. For further explanation see the LaRose Dec.

     34.    Admit only that Section 9 is titled "Pre-Owned Vehicle Disclosure Notice". In further responding defendant specifically denies any inference that Wide World violated the portions of the manual referring to disclosure.

     35.    Admit only that this is what the CPO Manual says, but further answering, states that this is a guideline only. In further responding defendant specifically denies any inference that Wide World violated the portions of the manual referring to disclosure.

     36.    Deny. The citations by Plaintiff are incorrect. There is only one (1) Sample Damage Disclosure Notice for the Dealership. *See* Exhibit 11 to the Rothfarb Dec. at p. 74. The other one is for BMW Group, which is only required if the vehicle was a "repurchase/trade assist." *See* Exhibit 11 to the Rothfarb Dec. at p. 75.

37.    Deny. The Dealership Disclosure Notice includes fields for "Body," and "Paint," related to repairs performed *while in the Dealership's possession only* and a field for "Other" for other important background information, which is not defined. *See* Exhibit 11 to the Rothfarb Dec. at p. 74. The field for "reported damage, concerns, or conditions" is located on the BMW Group disclosure which is only required to be filled out by BMW Group where the vehicle was a repurchase or trade assist vehicle. *See* Exhibit 11 to the Rothfarb Dec. at p. 75. Furthermore, it again only refers to damage or repairs done while in BMW's possession. For further explanation see the LaRose Dec.

38.    Deny. The field for "list specific repairs" is located on the BMW Group disclosure which is only required to be filled out by BMW Group where the vehicle was a repurchase or trade assist vehicle. *See* Exhibit 11 to the Rothfarb Dec. at p. 75.

39.    Admit only that Section 13 is titled "Non-Compliance with CPO Program Operating Guidelines, Criteria and Processes." In further response defendant further states that interpretation of this Section requires referral to other Sections of the Manual and denies any implication that Wide World was in non-compliance with the CPO Program for plaintiff's car.

40.    Admit only that this is a portion of what the CPO Manual says, (as plaintiff does not quote that Section in full) but further denies any interpretation or insinuation of the meaning of this definition by Plaintiff and further that understanding of the meanings of the language of this Section requires referral to other portions of the Manual. For further explanation see the LaRose Dec.

41.    Admit only that Section 3.1 is titled "Specifically Prohibited Operating Practices."

42.    Admit.

43.     Admit that this is what the CPO Manual states, but deny any insinuation that the subject vehicle was an ineligible vehicle.

44.     Admit.

45.     Admit that the VIC is a required step in the CPO process before a vehicle's certification is complete.

46.     Admit only that this is what the CPO Manual states.

47.     Admit.

48.     Admit only that this is what the CPO Manual states, but further answering states that "Service Advisor" is not defined. Service Advisor is not defined in the Manual.

49.     Admit only that the question "[d]oes CARFAX or AutoCheck report disqualify for CPO" is under the section to be filled out by the Service Advisor, a term that is not defined. Furthermore, the CPO Manual does not indicate who makes the determination that the CARFAX report does not disqualify the car for CPO status. For further explanation see the LaRose Dec.

50.     Admit only that this is what the CPO Manual states but denies the insinuation that the subject vehicle had an inconsistent or incomplete maintenance history or a disqualifying CARFAX.

51.     Admit only that this is what the CPO Manual states and defendant further states that it denies any insinuation that it violated this portio of the CPO Manual concerning certifying plaintiff's car. For further explanation see the LaRose Dec.

52.     Admit.

53.     Admit, but denies any implication that Wide World was operating with the expressed consent of BMW North America to participate in a CPO Program.

54.     Admit only that this is what the Center Participation Agreement says, but denies any implication that there's any evidence that Wide World violated this agreement.

### *WWC CPO Process*

55.     Deny that Wide World Developed its own internal procedures related to the CPO Program. Defendant further states it is a document that incorporates the guidelines from the CPO Manual, but put into a way to make it easier for the Wide World employees to follow the CPO process. *See* **Exhibit "5"** (Trontz deposition) to the LaRose Dec. at pgs. 75-76.

56.     Deny. Defendant denies any implication that by creating this document it meant Wide World was to not reference, incorporate or otherwise addressed *any* sections of CPO Manual including the Pre-Owned Vehicle Disclosure Notice Policy and Damage Notice Disclosure. See for further explanation the LaRose Dec.

57.     Deny based on an improper inference and on the basis of an improper citation to the record. Defendant further states that Mr. Jackson testified that this is not part of the service operation (Jackson deposition **Exhibit "8"** at page 12) and notes to this Court that the sample dealer disclosure form is to be signed by the General Manager and not the Service Department; see also Exhibit 11 to Rothfarb Dec. at page 74.

58.     Admit that this is what Mr. Trontz testified to.

### *WWC Acquisition of the Vehicle*

59.     Admit.

60.     Admit.

61.     Admit. Defendant further notes to this Court that the purchase documents page 5 of plaintiff's Exhibit "10" reflects they use three appraisal services were utilized: "Non Core", "Manheim" and "Blackbook".

62.     Deny as an improper characterization of the testimony given. Mr. Trontz testified that, with regard to the acquisition of used vehicle report, Wide World's policy is that no car is acquired or paid for without having a CARFAX vehicle history report. *See* **Exhibit "5"** (Trontz deposition) pgs. 32-33.

### *CPO Enrollment and Isabelle Torres*

63.     Admit that Wide World enrolled the subject vehicle in the CPO Program on October 10, 2013. Further answering, deny that Plaintiff's Exhibits 21 and 22 refer to this fact. Additionally, deny the accuracy of Plaintiff's Exhibits 21 and 22 as it reflects on the CPO Process for this car.

64.     Admit, but deny that Plaintiff's Exhibit 15 refers to this fact.

65.     Admit, but denies any implication that this violated the CPO Manual.

66.     Deny. The cited testimony is misinterpreted by plaintiff and does not support this statement. Further, Exhibit 23 of to the Rothfarb Dec. clearly shows that she never signed the VIC.

67.     Admit that *one* of Ms. Torres' title at Wide World was receptionist. According to the Jackson deposition she held other roles and responsibilities. *See* **Exhibit "8"** (Jackson deposition) page 54.

68.     Admit that Ms. Torres' title was not "Service Advisor", but further states Ms. Torres was trained in and responsible for filling out CPO paperwork and as such served in the capacity of an Internal Service Advisor. *See* **Exhibit "8"** (Jackson deposition) to the LaRose Dec. at pgs. 147-149, see also Plaintiff's Exhibit J12, Step 3 referencing the Internal Service Advisor's role and functions.

69.     Admit only that it was one of her job responsibilities to prepare CPO paperwork. *See* **Exhibit "8"** (Jackson deposition) to the LaRose Dec. at pgs. 147-149.

70.     Admit, and further answering state that Ms. Torres did not determine whether an AutoCheck or CARFAX report disqualified a vehicle from CPO Certification. That was the responsibility of and determined by the Pre-Owned Manager. *See* Exhibit 12 to the Rothfarb Dec. at Step 2(B). See also, the Michael Jackson Declaration.

71.     Admit that is what the testimony states but further states and denies any implication that this in any way violated CPO Procedures.

72.     Deny. It was not Ms. Torres job duty or responsibility to determine whether an AutoCheck or CARFAX report disqualified a vehicle from CPO Certification. That was the responsibility of and determined by the Pre-Owned Manager. *See* Exhibit 12 to the Rothfarb Dec. at Step 2(B). See, the Michael Jackson Declaration.

73.     Admit, but further states this has no relevancy to the issues in this litigation.

74.     Deny this is a mischaracterization of the testimony. Ms. Torres did not sign the VIC; she only here printed her name in Section 1. *See* Exhibit 23 to the Rothfarb Dec.

75.     Deny. Ms. Torres did not sign the VIC; she only printed her name. *See* Exhibit 23 to the Rothfarb Dec.

76.     Admit only that Ms. Torres placed that checkmark but deny that Ms. Torres made the determination to check "NO". *See* Exhibit 12 to the Rothfarb Dec. at Step 2(B).  See also, the Michael Jackson Declaration.

### *CPO Inspection by William Ace*

77.     Admit the statement but deny that the citations support the statement.

78.     Admit.

79.     Deny. Mr. Ace estimated that he served a dozen cars or less. *See* **Exhibit "V"** to the LaRose Dec. at page 18.

80.     Admit.

81.     Deny as a mischaracterization of his testimony. Mr. Ace testified that he could not remember if he consulted the CPO Manual or any other materials other than the VIC in performing CPO inspections while at Wide World. *See* **Exhibit "V"** to the LaRose Dec. at pg. 60.

82.     Deny. The statement is not supported by the citation to the record. Further answering, the line of questioning that was cited was answered over objection.

83.     Admit only that Mr. Ace was qualified to make that determination, but further answering denies any implication that he was required to.

84.     Admit that Mr. Ace did not review the CARFAX but further states that he testified that he was not required to as that was part of the Sales Office function and further deny any implication that he was to determine if the CARFAX contained inaccurate information about accident history.

85.     Admit, but denies any implication that this was Mr. Ace's role to do so and in fact there is no testimony that that was part of his responsibilities. It's further noted that the Sample Damage Disclosure Notice is to be prepared and signed by the General Manager's name. *See* Exhibit 11 to the Rothfarb Dec. at p. 74.

86.     Admit. Further answering, this was not his role. *See* Exhibit H to the Rothfarb Dec. at 31:8-15. See also Exhibit J12 to Rothfarb Dec. Step 2. See also Michael Jackson Declaration.

87.     Admit.

88.   Admit.

### *WWC Representations to Maya Pyskaty*

89.   Admit only that this is what Plaintiff states in her Declaration.

90.   Admit only that this is what Plaintiff states in her Declaration.

91.   Deny. Although this is what Plaintiff states in her Declaration, it is not what she testified to at her deposition. *See* **Exhibit "3"** (Pyskaty deposition) to the LaRose Dec. pgs. 17-18 where she stated she didn't recall if it was  Wide World's website or someone else's.

92.   Admit that this is what Plaintiff states in her Declaration.

93.   Admit that this is what Plaintiff states in her Declaration.

94.   Admit only that this is what Plaintiff states in her Declaration.

95.   Admit only that this is what Plaintiff states in her Declaration.

96.   Admit that this is what Plaintiff states in her Declaration.

97.   Admit.

98.   Admit only that this is what Plaintiff states in her Declaration.

99.   Admit only that Plaintiff was told the car was CPO Certified and further states that per Ms. Pyskaty's deposition testimony she was aware that CPO cars were currently offered favorable rates before she came to the dealer. See **Exhibit "3"** (Pyskaty deposition) to the LaRose Dec. at pgs. 24-26.

100.   Admit only that this is what Plaintiff states in her Declaration.

101.   Deny. Although this is what Plaintiff states in her Declaration, it is not what she testified to at her deposition. At her deposition she did not state that Mr. Hasan told her that the car was "perfect". Rather, she only testified that he said it was accident free as a result of the clean CARFAX. *See* **Exhibit "3"** (Pyskaty Deposition) to the LaRose Dec. at pgs.33-34.

102.    Deny. Although this is what Plaintiff states in her Declaration, it is not what she testified to at her deposition. At her deposition she did not state that Mr. Hasan told her that he drove the car and determined it was a good car. Rather, she only testified that Mr. Hasan told her that the used car salesman was driving it to and from work and that it was a good car. *See* **Exhibit "3"** (Pyskaty deposition) to the LaRose Dec. at pgs.33-34.

### *Sale of the Vehicle*

103.    Admit.

104.    Admit.

105.    Admit, but further answering state that the CARFAX did not have the handwriting that it on the one that was marked as an Exhibit.

106.    Admit.

107.    Admit.

108.    Admit.

109.    Admit.

110.    Admit only that this is what Plaintiff states in her Declaration.

111.    Admit that this is what Plaintiff states in her Declaration and further states that Wide World was not required to do so pursuant to the CPO Manual.

112.    Admit that this is what Plaintiff states in her Declaration, denies any implication that defendant was required to do so for her Vehicle.

### *Assignment to BMW Bank*

113.    Admit.

114.    . Admit that this is what Plaintiff states in her Declaration.

115.    Admit that this is what Plaintiff states in her Declaration.

*Persistent Vehicle Problems*

116.    Deny. Although this is what Plaintiff states in her Declaration, the records do not support this statement. *See* **Exhibit "K"** (Repair Records) to the LaRose Dec. consisting of repair records at Plaintiff's000021-Plaintiff's000022) (the first recorded complaint (potentially) related to vibrations was not until December 2, 2013).

117.    Deny. This is a hearsay statement and not admissible, further she testified she was not present when that alleged conversation took place. See **Exhibit "3"** (Pyskaty Deposition) to the LaRose Dec. at pgs. 92-94.

118.    Admit only that this is what Plaintiff states in her Declaration, but further answering Wide World denies Plaintiff's claim that the vibration occurred in the first few weeks, it further notes that the Service Record of 12/2/13 reads that the customer states "please check after hitting a pothole even at slow speeds there's a banging noise, check vehicle tires, wheels and suspension all ok test drove vehicle. Unable to duplicate complaint". There is no entry about tightening the suspension. Further the statement only says with regards to the oil consumption "customer to monitor".

119.    Admit only that this is what Plaintiff states in her Declaration.

120.    Admit only that this is what Plaintiff states in her Declaration. Her repair records only document one time that this complaint was made which reflects that they were unable to duplicate the problem. *See* **Exhibit "K"** (Repair Records) at Plaintiff's000026. Furthermore her deposition testimony that she only experienced the intermittent door lock problem once before she brought it to the dealer and at most approximately 3 to 5 times thereafter. *See* **Exhibit "3"** (Pyskaty Deposition) to the LaRose Dec. pgs. 74-75.

121.    Admit only that this is what Plaintiff states in her Declaration.

122.   Admit only that this is what Plaintiff states in her Declaration.

123.   Deny. It was BMW NA's warranty, not BMW Bank and thus, BMW Bank could not have refused the alignment. Pursuant to the CPO Warranty wheel alignments are not a covered item and the BMW Maintenance Program Upgrade Agreement Section entitled "Exclusions", Defendant's **Exhibit "F"** to the LaRose Dec.

124.   Admit only that this is what Plaintiff states in her Declaration.

125.   Admit only that this is what Plaintiff states in her Declaration.

126.   Admit only that this is what Plaintiff states in her Declaration.

127.   Deny, although this is what she states in her Declaration and her deposition testimony it reveals no such testimony. *See* **Exhibit "3"** (Pyskaty Deposition) to the LaRose Dec.

128.   Deny, although this is what she states in her Declaration her deposition testimony is to the contrary. See **Exhibit "3"** (Pyskaty Deposition) to the LaRose Dec.

129.   Deny. Although this is what she states in her Declaration, Plaintiff deposition testimony reveals that she does not recall the specifics of the conversation and what she requested. *See* **Exhibit "3"** (Pyskaty deposition) to the LaRose Dec. at pgs. 111-119. Moreover, Mr. Pyskaty testified that their proposal to Wide World was to get a similar car with a similar monthly payment. *See* **Exhibit "4"** (S. Pyskaty) to the LaRose Dec. at pgs. 57-58. There is no testimony from either Plaintiff or Mr. Pyskaty that they explicitly expressed a wish to revoke, rescind or cancel outright the purchase of their CPO warranty car.

130.   Admit and Deny. Admit that Wide World did not agree to return, refund and rescission, but deny that Plaintiff requested this relief. *See* **Exhibit "3"** (Pyskaty deposition) to

the LaRose Dec. at pgs. 111-119; *see also* **Exhibit "4"** (S. Pyskaty) to the LaRose Dec. at pgs. 57-58.

131.    Admit only that this is what Plaintiff's states in her Declaration.

132.    Admit only that this is what Plaintiff's states in her Declaration.

133.    Admit only that this is what Plaintiff's states in her Declaration.

### *Documented Vehicle Accident and Ownership History*

134.    Admit only that an AutoCheck report was run on June 12, 2014.

135.    Admit only that the AutoCheck report states that there was a rear impact collision on August 24, 2012 and that the vehicle was towed.

136.    Admit only that the AutoCheck report indicates that it was announced at auction as "fleet/lease" and that it was reported as a rental or lease. Further answering, the AutoCheck report notes that there is no livery use record. *See* Exhibit 22 to the Rothfarb Dec. at p. 3.

137.    Deny, and further that the citations to the Rothfarb Declaration Exhibit C and/or D support this statement. Furthermore, defendant contends this argument should not be considered by the Court as it was never exchanged between the parties. For further explanation see the see the LaRose Dec.

138.    Admit only that based on Exhibit D to the Rothfarb Dec. that Multistate Restoration, Inc. is a Rhode Island domestic business corporation.

139.    Admit, but further states it did so because this is considered a confidential document so we deleted customer names to protect their identity. Defendant further notes plaintiff never objected to said redaction. Further defendant denies as being a hearsay and improper statement by Mr. Rothfarb and not contained in any deposition testimony and further deny that the documents in fact identify the first lessee as claimed. For further explanation see

the LaRose Dec. As this has now become an issue in this litigation an un-redacted copy will be submitted separately to the Court but not included in the documents filed online to protect the individual's identity. Further, that inquiry only indicates the owner at the time it was run namely last owner of record as of October 10, 2013 compare with warranty vehicle inquiry.

140.   Deny knowledge sufficient to form a belief as to the truth of the allegations as BMW Bank was not privy to the un-redacted DCS Net Warranty Vehicle Inquiry and does not know how Plaintiff discovered, if she did, the identity of the first lessee.

### Counsel Negotiations with WWC

141.   Admit only that this is stated in the Rothfarb Dec.

142.   Admit only that the letter was written by counsel but further denies that it sets forth the proper revocation.

143.   Admit that the letter was so written but further denies it constitutes a refusal to accept a revocation as based on the terms of the letter it was not a proper request for revocation. See Rothfarb Decl. paragraph 146, admit that the letter was received and that its' language speaks for itself. Admit only that Wide World did not chose to agree to the terms of plaintiff's letter but again denies it constituted a proper request for revocation.

144.   Can neither admit or deny as "conditions of sale" is unclear. Further answering, the document speaks for itself.

145.   Admit.

146.   Admit.

147.   Admit.

148.   Admit that this is what the Rothfarb letter states, but denies plaintiff made a proper demand to revoke so Wide World was within its rights.

### *Affirmative Misrepresentations and Non-Compliance with CPO Program*

149.    Deny that there was a "false" representation and further that the documents do not support plaintiff's statement.

150.    Deny that there was a "false" representation and further that the documents do not support plaintiff's statement.

151.    Deny. The sample Dealership Damage Disclosure Notice simply requires inclusion of paint and/or body repairs *performed while in the Dealership's possession*, or other important background information. *See* Exhibit 11 to the Rothfarb Dec. at p. 74. Further defendant denies any implication that she was entitled to full disclosure as claimed.

152.    Deny. There is no admissible evidence to support this contention and further states this was a guideline constituting a suggested bad practice. *See* Exhibit 11 to the Rothfarb Dec. at p. 19 (noting that it is a best business practice).

153.    Deny. This is an improper conclusion and not a fact that the CARFAX was disqualifying made by plaintiff. Defendant denies there were disqualifying CARFAX and denies improper conditioning of the car pursuant to the manual. *See* Exhibit 21 to the Rothfarb Dec.

154.    Deny. In again this is a legal conclusion and not an admissible fact. Defendant further states the car did receive CPO status which has never been revoked by BMW North America. For further explanation see the LaRose Dec.

155.    Deny as constituting a legal conclusion and not supported by admissible evidence. Defendant contends there was no violation of the CPO Program concerning plaintiff's vehicle. There was no reason to advise Plaintiff that the sale of the subject vehicle as CPO was in error because it was not. Thus, there was no reason to offer her a refund or to take whatever steps were necessary to satisfy her.

156.   Admit. But in further answering notes that the Rothfarb Statement of Material Facts states the checklist was only received approximately a year after the sale of the vehicle and was not provided to plaintiff at time of sale. Further, we deny the materiality of same.

157.   Deny that it was a false statement of fact, but admit that it was not obtained through BMW FS-Off Lease. *See* **Exhibit "5"** (Trontz deposition) to the LaRose Dec. at pgs. 119-123 (Mr. Trontz testified that he understands why whoever checked off that box might have done so). Further answering we deny that this has any materiality to the issues in this litigation.

158.   Deny on grounds that the portion of the record cited does not support the proposition. Further answering, information contained in a CARFAX is not one hundred percent accurate as reflected on the disclaimer on the document. *See* Exhibit 20 to the Rothfarb Dec.

159.   Admit that Wide World provided the VIC to the plaintiff approximately a year after the transaction and to further clarify, all the testimony in the case is that Wide World never obtained an AutoCheck report in connection with plaintiff's vehicle.

160.   Admit, to the extent that facts contained in the CARFAX speak for itself but deny any implication that this is accurate and/or that any implication that means that this document disqualified the car for CPO status. *See* Exhibit 11 to the Rothfarb Dec. Further answering, information contained in a CARFAX is not one hundred percent accurate as reflected on the disclaimer on the document. *See* Exhibit 20 to the Rothfarb Dec. Additionally, the CARFAX run on June 10, 2014 now lists "owner 1" as "personal lease." *See* **Exhibit "U"** (6/10/14 CARFAX) to the LaRose Dec.

161.   Admit, to the extent that facts contained in the CARFAX speak for itself but deny any implication that this is .accurate and/or that any implication that means that this document disqualified the car for CPO status. *See* Exhibit 11 to

the Rothfarb Dec. Further answering, information contained in a CARFAX is not one hundred percent accurate as reflected on the disclaimer on the document. *See* Exhibit 20 to the Rothfarb Dec. Additionally, the CARFAX run on June 10, 2014 now lists "owner 1" as "personal lease." *See* **Exhibit "U"** (6/10/14 CARFAX) to the LaRose Dec. Defendant further answering, states that "commercial" is not defined in the CPO manual. *See* Exhibit 11 to the Rothfarb Dec.

162.   Deny as a legal conclusion by plaintiff's counsel and not supported by admissible evidence. Further, defendant contends that "commercial" is not defined in the CPO manual. *See* Exhibit 11 to the Rothfarb Dec. Further, the testimony cited by Mr. Jackson is him merely using the word "commercial"; but he was never asked what "commercial" meant. *See* **Exhibit "8"** (Jackson deposition) to the LaRose Dec. pgs. 63-64. For further explanation see LaRose Declaration generally.

163.   Deny. Again, the VIC was not provided to plaintiff at the time of sale but only a year later. Further the remainder of this statement is a legal conclusion by plaintiff's counsel and is improper and not supported by the evidence. Further, defendant contends Ms. Torres was an internal service advisor. *See* Exhibit 12 to the Rothfarb Dec. at Step 3. It was not Ms. Torres job duty or responsibility to determine whether an AutoCheck or CARFAX report disqualified a vehicle from CPO Certification. That was the responsibility of and determined by the Pre-Owned Manager. *See* Exhibit 12 to the Rothfarb Dec. at Step 2(B). See also, the Jackson Declaration. For further explanation see LaRose Declaration generally.

164.   Admit, but in further answering states the document doesn't support plaintiff's legal conclusion that she determined that she determined that there was a disqualifying CARFAX that responsibility was that of the Pre-Owned Manager. *See* Exhibit 12 to the Rothfarb Dec. at Step 2. See also, the Jackson Declaration.

165.   Admit only that this is what Plaintiff states in her Declaration.

166.   Admit that this is what the document states, but submit that this is likely a typographical error since all other documents, including the CPO Inspection Checklist is dated October 16, 2013. *See* Exhibit 23 to the Rothfarb Dec.

167.   Wide World can neither admit nor deny this statement. It is not clear if the document contains two signatures or not despite Mr. Jackson's belief that there maybe two signatures. Further defendant denies that this has any materiality to the issues in this litigation.

168.   Deny. That is not what Mr. Trontz testified to. *See* **Exhibit "5"** (Trontz deposition) to the LaRose Dec. at pgs.109-111.  See our response to plaintiff's paragraph 166.

### *Subsequent Developments*

169.   Admit only that this is what Plaintiff states in her Declaration and further contends that all admissible evidence indicates to the contrary.

170.   Deny. Although Plaintiff states this in her Declaration, it is contradictory to her deposition testimony. Plaintiff specifically testified that she never experienced an issue with the power steering when she was driving the vehicle. *See* **Exhibit "3"** (Plaintiff's deposition) to the LaRose Dec. pg. 129.

171.   Deny that there were any defects, let alone substantial defects. Any issues that arose with the subject vehicle, which were covered by the warranty, *i.e.* oil consumption, were repaired under warranty. *See* **Exhibit "3"** (Plaintiff's deposition) to the LaRose Dec. pgs.55,56,69,106 and 107.

172.   Admit only that this is what Plaintiff states in her Declaration.

173.   Admit only that this is what Plaintiff states in her Declaration.

### *Noticeable Vehicle Defects*

174.   Deny. The Saliani Report and Jackson Report do not support this statement. *See* Exhibits K and L to the Rothfarb Dec. and further see **Defendant's Exhibit "10"** for the missing portions of the Saliani Report. Defendant also directs the Court to **Defendant's Exhibit "R"** to the LaRose Declaration, the Lopez Report which further does not support this statement.

**175.**   Deny as a legal conclusion set forth by plaintiff not supported by the evidence. The complete Saliani Report and Jackson Report do not support this statement, nor does the Lopez Report which states in part "there has been no substantial impairment of use, value or safety." *See* Exhibits K and L to the Rothfarb Dec. See **Exhibit "R"** (Lopez Report) to the LaRose Dec. For further explanation see the LaRose Declaration.

176.   Deny. There is no admissible evidence that the car had been involved in a "major accident" nor that body panels had been replaced. This is not supported by cited testimony as Mr. Jackson did not testify as to a "major accident". And further this is not supported by the complete Saliani Report. Further defendant denies this is material since the existence of these conditions which would not have disqualified the car from CPO Certification. *See* Exhibit K to the Rothfarb Dec. which states "The vehicle was inspected to determine if there was any issue related to its body work and structure that would have disqualified the car from being a certified pre-owned vehicle at the time it was sold to Mrs. Pyskaty; none were found.") For further explanation see LaRose Declaration generally.

177.   Admit that this was Mr. Jackson's testimony, but deny that there was any testimony as to when he believed these accidents and/or body work occurred. Also as a matter of clarification his inspection of the car was the inspection done as an expert conducted on August 10, 2017. There is no testimony that he inspected the vehicle during the CPO Certification Process.

178.   Admit that this is noted in his comments, but further note that in the narrative portion of his report, which plaintiff did not include but has been annexed as **Defendant's Exhibit "10"** to LaRose Dec. and the GEICO estimate obtained from plaintiff documenting previous repairs, he stated the car could be restored to a condition *as good as new* for less than $5,000 and further described that the repairs he saw would have "minimal effect on the overall value of the vehicle" certified. Finally, we again deny that the claimed condition of body repairs and paint meant the car could not be CPO Certified.

### *Advertisement of the Vehicle*

179.   Deny. The subject vehicle was enrolled in the CPO Program on October 10, 2013. *See* Exhibit 23 to the Rothfarb Dec. Further answering, the testimony cited does not support this proposition. Rather, it is just the witnesses reading from the CARFAX, which disclaims that the information contained therein is not always accurate. *See* Exhibit 21 to the Rothfarb Dec.; See **Exhibit "8"** (Jackson) to the LaRose Dec. pg. 153; Rothfarb Dec.; **Exhibit "5"** (Trontz) to the LaRose Dec. pg.114. Additionally, Wide World's work order no. 236209 indicates that the request for the CPO inspection and related work was opened on October 10, 2013 and completed on October 16, 2013. *See* **Exhibit "12"** (WW work order 23609) to the LaRose Dec. Furthermore, the CPO Checklist was signed by all managers on October 16, 2013. *See* Exhibit 23 to the Rothfarb Dec. See Jackson Declaration.

180.   Admit that is what the CARFAX says, but further answering, states: The subject vehicle was enrolled in the CPO Program on October 10, 2013. *See* Exhibit 23 to the Rothfarb Dec. The testimony cited does not support Plaintiff's proposition. Rather, it is just the witnesses reading from the CARFAX, which disclaims that the information contained therein is not always accurate. *See* Exhibit 21 to the Rothfarb Dec.; **Exhibit "8"** (Jackson deposition) to the LaRose

Dec. pg. 153; Rothfarb Dec.; **Exhibit "5"** (Trontz deposition) to the LaRose Dec. pg. 114. Additionally, Wide World's work order no. 236209 indicates that the request for the CPO inspection and related work was opened on October 10, 2013 and completed on October 16, 2013. *See* **Exhibit "12"** (WW work order 23609) to the LaRose Dec.. Furthermore, the CPO Checklist was signed by all managers on October 16, 2013. *See* Exhibit 23 to the Rothfarb Dec. See also the Jackson Declaration.

181.    Admit that is what the Autocheck report says, which comes with a disclaimer as to its accuracy and further states that all admissible evidence shows that the car was not offered for sale as a CPO car prior to October 16, 2013. See our response to paragraph 180.

182.    Admit only that is what Plaintiff's Declaration states.

183.    Admit.

184.    Deny. Mr. Trontz testified only that he *believes* that the CPO designation adds value to the resale of vehicles for Wide World. **Exhibit "5"** (Trontz deposition) to the LaRose Dec. pg. 129.

### *Out-of-Pocket Losses*

185.    Deny. The total cost of the loan includes the interest on the rollover amount, which cannot be part of the computation of Plaintiff's damages under any of her theories. **Exhibit "3"** (Plaintiff's deposition) to the LaRose Dec. pg. 139. Furthermore defendant Wide World contends that the alleged out-of-pocket losses are not material and proper to the Motion for Summary Judgment and inappropriate Statement of Material Facts Wide World refutes now and reserves the right to refute in the future that any of these claims for out-of-pocket costs are recoverable. This applies to paragraphs 185 through 194.

186.    Admit only that this is what Plaintiff's Declaration states. See our response to 185 above.

187.    Admit, but notes it includes the rollover amount.

188.    Admit only that this is what Plaintiff's Declaration states.

189.    Admit only that this is what Plaintiff's Declaration states, but notes it includes the rollover amount.

190.    Admit only that this is what Plaintiff's Declaration states and in further answering defendant contends none of these out-of-pocket expenses are items covered under warranty nor the result of any failure of any BMW Dealership to provide proper warranty work. For further explanation see LaRose Declaration.

191.    Admit.

192.    Admit only that this is what Plaintiff's Declaration states.

193.    Deny. As previously stated the total cost of the loan includes the interest on the rollover amount, which cannot be part of the computation of Plaintiff's damages under any of her theories.

194.    Admit that this only allegations by plaintiff the defendant contends that charges by the expert are not reasonable under these circumstances and certain portions should not be paid as they were only incurred due to the fact that plaintiff's counsel lost the photographs and Mr. Grismer had deleted them from his file and records. For further explanation see LaRose Dec.

## ADDITIONAL MATERIAL FACTS

### Background

1.    This litigation concerns a certified pre-owned ("CPO") 2010 BMW 750 LXI, VIN No. WBAKC8C54ACY68053 (the "Subject Vehicle") purchased by Plaintiff Maya Pyskaty

("Plaintiff") from Wide World of Cars, LLC ("Wide World") on October 31, 2013, and financed by BMW Bank. (Ex. D, Amended Complaint at ¶¶ 20; Ex. E, Retail Installment Contract; Purchase Order to the LaRose Dec.).

2.     Wide World purchased the Subject Vehicle, which was owned by Rockland Motors, through Congers Auto Sales for $39,500. (Ex. G, Wholesale Certificate of Sale and Purchase Agreement; Ex. 5, Trontz Tr. at 38: 17-39:13 the LaRose Dec.). The agreement to purchase the Subject Vehicle was made on October 5, 2013, but the transaction was not completed until the issuance of a check on or about October 7, 2013. (Ex. G, Wholesale Certificate; Ex. 5, Trontz Tr. at 39: 14-40: 3 to the LaRose Dec.).

3.     The Subject Vehicle was then enrolled in the CPO program on October 10, 2013. The CPO inspection process was completed and the Subject Vehicle certified CPO on October 16, 2013. (Ex. J-23  Vehicle Inspection Checklist to the Rothfarb Dec.).

4.     Wide World ran two CARFAX reports prior to enrollment in the CPO program – one on October 7, 2013 and the other on October 10, 2013. (Ex. I, October 2013 CARFAX Reports to the LaRose Dec.). Both of these CARFAX reports indicated that there were no prior accidents or damage reported to CARFAX. (Id.)

**Purchase of Subject Vehicle by Plaintiff**

5.     On October 31, 2013, Plaintiff went to Wide World looking to purchase a specific BMW 750 after seeing an online ad – although she does not recall if it was on Wide World's site or somewhere else. (Ex. 3, Plaintiff Tr. at 17: 10-17; 18: 6-8; 23: 13-16 to the LaRose Dec.). When she arrived, she was told that it was sold. (Ex. H, Plaintiff Tr. at 18: 9-14 to the LaRose Dec.).

6.     Plaintiff then looked at a white BMW 750 and took it for a test drive. (Ex. H, Plaintiff Tr. at 18: 17-19: 1 to the LaRose Dec.). However, she did not purchase this vehicle because it was not a CPO and she wanted to take advantage of the CPO interest rate. (Ex. H, Plaintiff Tr. at 19: 2-7 to the LaRose Dec.).

7.     On her way out of the dealership, she saw the black 2010 BMW 750 that she ultimately purchased. (Ex. 3, Plaintiff Tr. 19: 13-20 to the LaRose Dec.). She and her now husband, Steve Pyksaty, looked over the vehicle while it was in the show room. (Ex. H, Plaintiff Tr. 30: 16-31: 1 to the LaRose Dec.). She specifically looked over the exterior of the vehicle for dents and scratches, but did not see any. (Ex. 3, Plaintiff Tr. 31: 2-11 to the LaRose Dec.). Plaintiff could not recall if she test-drove the Subject Vehicle before purchasing it. (Ex. H, Plaintiff Tr. at 21: 12-13 to the LaRose Dec.).

8.     Plaintiff asked the Wide World salesman, Moon Hasan, whether the Subject Vehicle had been in an accident. (Ex. 3, Plaintiff Tr. at 33: 8-9 to the LaRose Dec.). Mr. Hasan relayed the information contained in the CARFAX that the Subject Vehicle had not been in an accident and Plaintiff was provided with a copy of said CARFAX. (Ex. 3, Plaintiff Tr. at 33: 8-13; Ex. I, 10/31/13 CARFAX to the LaRose Dec.).

9.     Plaintiff then signed numerous documents for the purchase of the Subject Vehicle and the trade-in of her BMW M5. (Ex. 3, Plaintiff Tr. at 34: 17-18, 23 to the LaRose Dec.). The trade-in BMW was subject to a car loan with an outstanding balance of $19,957.00. (Ex. J, Purchase Information Screen Shot to the LaRose Dec.). Plaintiff decided to "rollover" the outstanding balance into the loan she took out on the Subject Vehicle, at the lower interest rate. (Ex. 3, Plaintiff Tr. at 25: 22-26: 15 to the LaRose Dec.).

10.    Specifically, Plaintiff signed a Retail Installment Contract (See Ex. J-14 to the Rothfarb Dec., Retail Installment Contract; Ex. 3, Plaintiff Tr. at 37: 6-12 to the LaRose Dec.) and a Buyer/Lessee Delivery Acknowledgement document (Ex. E, Buyer/Lessee Delivery Acknowledgment; Ex. 3, Plaintiff Tr. at 37: 21-38: 4 to the LaRose Dec.). She also signed a document in which she declined BMW Tire Wheel Protection. (Ex. F, Coverage Document to the LaRose Dec.).

11.    Additionally, Plaintiff received the "Buyer's Guide", which states: "IMPORTANT: Spoken promises are difficult to enforce. Ask Dealer to put all promises in writing." (Ex. F, Buyer's Guide to the LaRose Dec.). Notably, Plaintiff is not claiming that Wide World breached the warranty contained in the Buyer's Guide. (Ex. 3, Plaintiff Tr. at 38: 3-6, 9-11 to the LaRose Dec.).

12.    The price of the Subject Vehicle was $48,500.00 and Plaintiff paid another $2695.00 for "maintenance", which included the CPO warranty and extended warranty agreement for a total of $51,195.00 excluding taxes and fees. (Ex. E, Purchase Order; Ex. N, BMW Maintenance Program Upgrade Agreement to the LaRose Dec.).

13.    The Subject Vehicle was delivered to Plaintiff on the same date of purchase and she left Wide World in it. (Ex. E, Buyer/Lessee Delivery Acknowledgment; Ex. 3, Plaintiff Tr. at 34: 24-35: 3 to the LaRose Dec.).

**Purchase Order**

14.    The Purchase Order relates to the purchase of the Subject Vehicle and contains Plaintiff's initials and signature. (Ex. E, Purchase Order; Ex. 3, Plaintiff Tr. at 36: 10-23; 37: 2 to the LaRose Dec.)

15.     In signing this document, Plaintiff certified that "[s]he has read the terms on the front and back of this Order . . . ." (Ex. E, Purchase Order at p. 2 to the LaRose Dec.).

16.     The Additional Terms of Agreement for the Purchase Order includes a "Disclaimer of Warranties" paragraph, which states in bold, capital letters the following:

> **DEALER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE VEHICLE AND THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. HOWEVER, THIS PROVISION DOES NOT AFFECT (1) ANY WARRANTIES COVERING THE VEHICLE THAT THE MANUFACTURER OR SUPPLIER MAY PROVIDE, (2) DOES NOT LIMIT ANY IMPLIED OR OTHER WARRANTIES IMPOSED AS A MATTER OF LAW (e.g. LEMON LAWS), (3) DOES NOT LIMIT ANY WARRANTY DESCRIBED IN THIS AGREEMENT OR IN A SEPARATE WRITING GIVEN IN CONNECTION WITH THIS TRANSACTION. ADDITIONALLY, EXCEPT AS REQUIRED BY LAW, DEALER IS NOT LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE SALE OF THIS VEHICLE.**

(Ex. E, Purchase Order, Additional Terms of Agreement at ¶ 8 to the LaRose Dec.).

17.     Paragraph 12 of the Purchase Order states that "[t]here are no understandings or agreement between Dealer and Customer other than those set forth in this Agreement and attachments to this Agreement, if there are any such attachments." (Ex. E, Purchase Order, Additional Terms of Agreement at ¶ 12 to the LaRose Dec.).

### Buyer/Lessee Delivery Acknowledgment

18.     The Buyer/Lessee Delivery Acknowledgment document contains an express provision entitled "**Vehicle History Disclaimer and Release,**" which states in its entirety:

> A Vehicle History Report, prepared by an independent service provider such as, but not limited to, CARFAX, AutoCheck, instaVIN or NMVTIS, is provided with every pre-owned vehicle sold. **Dealer is not responsible for the content or the accuracy of the information in the Vehicle History Report and assumes no responsibility for any error or omission or delayed reporting of information in any Vehicle History Report and does not warrant the accuracy or reliability of any information**

in a Vehicle History Report. <u>Use of a Report is at your own risk</u>. *The Vehicle History Report is provided strictly on an ASIS WHERE IS basis, and all warranties, express or implied, including any implied warranties of merchantability or fitness for a particular purpose regarding the Report are disclaimed.* **By executing this document and accepting delivery of the above vehicle, you hereby release and agree to hold harmless Dealer from any damages, claims or liability, of any kind whatsoever, arising or resulting from or connected to any inaccuracy or omission on any vehicle History Report, including any diminished value of a purchased pre-owned vehicle.**

(Ex. E, Buyer/Lessee Delivery Acknowledgment to the LaRose Dec.) (emphasis added).

19.     Paragraph 6 of this document states that Plaintiff acknowledges:

that there are risks to having any after-market part or accessory installed on the vehicle and that **I understand that after-market parts and accessories are not tested or certified by the vehicle manufacturer and may not meet the manufacturer's standards and specifications,** that the manufacturer considers the installation of any after-market part or accessory, ***including tires and wheels,*** to be an unauthorized modification which is NOT covered by the manufacturer's warranty, that any item damages or impaired as a result of the installation of an after-market part or accessory is also not covered by the manufacturer's warranty, and I that [sic] assume any and all risks, including the risk of damage and injury to persons or property that may result from the installation of an after-market part or accessory[.]

(Ex. E, Buyer/Lessee Delivery Acknowledgment to the LaRose Dec.) (emphasis added).

20.     Paragraph 11 states that "I have been provided a copy of my purchase agreement,

retail installment contract or motor vehicle lease agreement, as applicable to my transaction, and

the warranties which apply to the vehicle." (Ex. , Buyer/Lessee Delivery Acknowledgment to the

the LaRose Dec.).

21.     Plaintiff received and signed the Buyer/Lessee Delivery Acknowledgment form,

certifying, *inter alia,* that she read the Vehicle History Disclaimer and Release, and that she

understood that the dealership is relying upon this form in delivering the vehicle. (Ex. E

Buyer/Lessee Delivery Acknowledgment; Ex. 3, Plaintiff's Tr. at 37: 21-38: 4 to the LaRose

Dec.).

## October 31, 2013 CARFAX[1]

22.     Plaintiff was provided with a copy of the CARFAX, which was run on the date of

purchase, October 31, 2013. (Ex. 3, Plaintiff's Tr. at 33: 12-13 to the LaRose Dec.).

23.     On the first page of the CARFAX report, it states "No accident / damage reported

to CARFAX". (Ex. U, 10/31/13 CARFAX to the LaRose Dec.).

24.     The CARFAX Report contains a disclaimer in bold, capital letters, which states in

pertinent part:

> **CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND
> RELIABILITY OF ITS INFORMATION. THEREFORE, NO
> RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR
> ERRORS OR OMISSIONS IN THIS REPORT. CARFAX FURTHER
> EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED,
> INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR
> FITNESS FOR A PARTICULAR PURPOSE.**

(Ex. U, 10/31/13 CARFAX to the LaRose Dec.).

## Plaintiff's Background

25.     Plaintiff is currently employed as a truck driver with Pyskaty Bros. Trucking. (Ex.

3, Plaintiff's Tr. at 9: 21-10: 3 to the LaRose Dec.).

26.     She has a background and experience in automobile repairs, maintenance and

mechanics. (Ex. 3, Plaintiff's Tr. at 11: 21-24 to the LaRose Dec.). When she was 17 years old

she worked for a repair shop doing automotive repairs such as suspension parts, axels, and

transmission removal and installation for one year. (Ex. 3, Plaintiff's Tr. at 12: 2-5, 12-15 to the

---

LaRose Dec.). To this day she does maintenance at Pyskaty Bros. Trucking as well as on her personal vehicles. (Ex. 3, Plaintiff's Tr. at 12: 15-16; 13: 2-3, 10-18 to the LaRose Dec.).

### Post Purchase Complaints/Service/Repairs

27.     Plaintiff never took the Subject Vehicle back to Wide World for servicing, repairs and/or maintenance, instead electing to visit other BMW dealerships in New Jersey located near her home. (Ex. 3, Plaintiff's Tr. at 45: 24- 46: 9; service invoices from Open Road of Newton and Paul Miller to the LaRose Dec.) (Ex. O, Service Invoices, Plaintiff's000021-Plaintiff's000034).

28.     Starting on the day that she left the dealership, the car had a vibration. (Ex. 3, Plaintiff's Tr. at 41: 23-24 to the LaRose Dec.). It was minor and annoying at first and Plaintiff primarily noticed it on highways during the first month, but it worsened over time. (Ex. 3, Plaintiff's Tr. at 42: 1-10l 43: 3 to the LaRose Dec.). However, the first recorded complaint (potentially) related to vibrations was not until December 2, 2013. (Ex. O at Plaintiff's000021-Plaintiff's000022). The Invoice notes: "Customer states please check after hitting a pot hole even at slow speeds there[']s a banging noise. Checked vehicle tires, wheels and suspension. All OK. Test drove vehicle. Unable to duplicate complaint. Vehicle is operating as designed at this time." (Ex. O at Plaintiff's000021-Plaintiff's000022).

29.     A complaint of vibrations is referenced in the March 28, 2014 invoice from Open Road of Newton: customer states Subject Vehicle "vibrates at all speeds, mostly felt from passenger's seat. Both [passenger side] wheels bent." (Ex. O at Plaintiff's000025-Plaintiff's000027). It is also noted that the vehicle was test driven and they were "unable to duplicate complaint." (Ex..O at Plaintiff's000025-Plaintiff's000027). Open Road of Newton was

also unable to duplicate Plaintiff's complaint about the driver's side door locking. (Ex. O at Plaintiff's000025-Plaintiff's000027).

30.   Plaintiff purchased four (4) new aftermarket wheels and tires off of eBay from a tire and wheel store in May 2014. (Ex. 3, Plaintiff's Tr. at 78: 17-79: 14, 17-22; 81: 3-10, 24-82: 7 to the LaRose Dec.).

31.   On May 30, 2014, Plaintiff brought the Subject Vehicle to Paul Miller complaining of, *inter alia*, vibration throughout. (Ex. O at Plaintiff's000032). The aftermarket tires were on the vehicle at that time. (Ex. O at Plaintiff's000032-Plaintiff's000033). There was a note to check all the tires and wheel and advise on alignment. (Ex. O at Plaintiff's000032). There was also a note to "check tire in the trunk and advise" and that "CDR Customer declined recommended services at this time." (Ex. O at Plaintiff's 000033). The invoice further indicated that Paul Miller installed the factor wheels and tires back onto the Subject Vehicle and performed a four (4) wheel alignment. (Ex. O at Plaintiff's000033). The car was ready on June 3, 2014. (Ex. O at Plaintiff's000032-Plaintiff's000033).

32.   Plaintiff's oil consumption issue was addressed and repaired under warranty. *See* **Exhibit "3"** (Plaintiff) at 55 and 69.

33.   Plaintiff independently decided to stop driving the Subject Vehicle around June 2014 because of the vibration issue and she did not feel safe driving it. (Ex. 3, Plaintiff's Tr. at 56: 17-21; 134: 6-18 to the LaRose Dec.).]

### Plaintiff's "Investigation"

34.   On June 12, 2014, Plaintiff's husband ran an AutoCheck Vehicle History Report. (See Exhibit J-22 to the Rothfarb Dec., AutoCheck Report; Ex. H, Plaintiff's Tr. at 97: 22-98: 3; 99: 1-5; Ex. 4, S. Pyskaty's Tr. at 47: 13-21 to the LaRose Dec.). This report indicated that the

Subject Vehicle had been involved in a rear-end accident in Rhode Island and had been towed. (See Exhibit J-22 to the Rothfarb Dec.)

### June 10, 2014 CARFAX

35.     Wide World ran an additional CARFAX on the subject Vehicle on June 10, 2014. (Ex. U, 6/10/14 CARFAX to the LaRose Dec.). This CARFAX no longer showed that the Subject Vehicle had previously been a commercial fleet vehicle; rather, it indicated that the Subject Vehicle was always a personal vehicle. (Ex. U, 6/10/14 CARFAX to the LaRose Dec.).

### CPO Manual

36.     All items set forth in the CPO Manual are not required; the CPO Manual refers to "best practices". *See* Exhibit 11 to the Declaration of Evan S. Rothfarb dated August 3, 2018 (hereinafter "Rothfarb Dec.") at p. 4, at § 3.2.

37.     There are repercussions for Wide World should BMW North America, LLC ("BMW NA") determine that Wide World did not comply with the required processes and procedures of its CPO Manual. Specifically, Wide World could be suspended and/or terminated from the CPO program. *See* Exhibit "5" (Trontz deposition) to the LaRose Dec. pgs.43-44; *see also* Exhibit 11 to the Rothfarb Dec. at p. 3 at § 2.1 and p. 22 at § 13.

38.     Wide World was audited annually in 2013. *See* Exhibit "5" (Trontz deposition) to the LaRose Dec. pg.43.

39.     Wide World has never failed a BMW NA audit. *See* Exhibit "5" (Trontz deposition) to the LaRose Dec. pgs. 43-44.

### CPO Paperwork

40.     Ms. Torres was trained in and responsible for filling out CPO paperwork. Mr. Jackson trained her. *See* Exhibit "8" (Jackson deposition) to the LaRose Dec. pgs. 47-49.

41.    Service Advisor is not defined. *See* Exhibit 11 to the Rothfarb Dec.

42.    Wide World's Internal CPO Procedure document references an "internal service advisor" who is responsible for running/printing CARFAX reports, among other things. Exhibit 12 to the Rothfarb Dec. at Step 3.

43.    Wide World's Pre-Owned Manager is responsible for ensuring the reported vehicle condition qualifies it for certification. Exhibit 12 to the Rothfarb Dec. at Step 2(B).

44.    Wide World incorporates herein by reference its' 56.1 Statement of Material Facts submitted in connection with Wide World's Motion for Summary Judgment **Exhibit "1"** to the LaRose Declaration.


Dated: New York, New York
       August 31, 2018

                              LAROSE & LAROSE, ESQS.

                         By: _____
                              KEITH V. LAROSE
                              510 Haight Avenue
                              Poughkeepsie, NY 12603
                              Tel: (845) 454-2001
                              Fax: (845) 454-2535
                              laroseandlarose@gmail.com
                              *Attorneys for Defendant*
                              *Wide World of Cars, LLC*
                              *d/b/a BMW*

To:    Via E-File Only
       Daniel A. Schlanger, Esq.
       SCHLANGER & SCHLANGER, LLP
       32 Broadway, Suite 601
       New York, New York 10004
       Tel: (914) 946-1981
       Fax: (914) 946-2930
       *Attorneys for Plaintiff*

BIEDERMANN HOENIG SEMPREVIVO
 A Professional Corporation
 Attorneys for Defendant
 BMW Bank of North America
 One Grand Central Place
60 East 42nd Street, Suite 660
New York, New York 10165
(646) 218-7560