**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

MAYA PYSKATY,

                    *Plaintiff,*

          v.

WIDE WORLD OF CARS, LLC, d/b/a
WIDE WORLD BMW;
BMW BANK of NORTH AMERICA,

                    *Defendants.*

Case No. 17-cv-1600(JCM)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
<u>TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>**

Evan S. Rothfarb
Daniel A. Schlanger
SCHLANGER LAW GROUP LLP
9 East 40th St., Suite 1300
New York, NY 10016
T: (212) 500-6114
F: (646) 612-7996
erothfarb@consumerprotection.net
dschlanger@consumerprotection.net

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 5

PROCEDURAL POSTURE ........................................................................... 5

STANDARD OF REVIEW ............................................................................ 6

ARGUMENT ................................................................................................ 6

   I.   Express Written Warranties, Oral Warranties and Implied Warranties
       Apply to Plaintiff's Purchase of the Vehicle from WWC. ...................6

      A.  Defendants Created and Breached Express Written Warranties for the
          Vehicle Under the MMWA. ...............................................................6

      B.  Defendants Created and Breached Written and Oral Warranties for the
          Vehicle Under New York Law. ........................................................11

      C.  Defendants Breached the Implied Warranty of Merchantability Under
          the MMWA and New York Law. ......................................................14

   II.  The Disclaimers Relied Upon by Defendants Do Not Apply to Plaintiff's
       Claims. ..............................................................................................16

      A.  The Vehicle Sale Transaction Was Governed by the Magnuson Moss
          Consumer Warranty Act Which Specifically Renders All Disclaimers
          as to Implied Warranties Ineffective..................................................16

      B.  The Retail Installment Contract and New York Contract Law Render
          the Disclaimers of Implied Warranties Ineffective. .........................17

  III.  Defenses Deceptive Acts and Practices, Including False Advertising,
       Subject It Liability Under New York Gen. Bus. Law §§ 349 and 350..................18

  IV.  Genuine Issues of Material Fact Preclude Summary Judgment on
       Plaintiff's Common Law Fraud Claim. .............................................22

   V.  BMW Bank Is Liable for Wide World of Cars, LLC's Misconduct
       Pursuant to the FTC Holder Rule and New York State Holder Rule. ...................24

    CONCLUSION .......................................................................................... 28

## PRELIMINARY STATEMENT

Plaintiff Maya Pyskaty is an individual consumer who brings suit against an auto dealership, Wide World of Cars, LLC d/b/a Wide World BMW ("WWC"), and its assignee, BMW Bank of North America ("BMW Bank") regarding significant deceptive and unlawful conduct by WWC in connection with Ms. Pyskaty's purchase of a 2010 BMW 750Li with X-Drive automobile (the "Vehicle") on October 31, 2013.

Ms. Pyskaty has moved for summary judgment pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, for breach of express and implied warranties, New York Uniform Commercial Code § 2-313 (breach of express warranty), New York U.C.C. § 2-314 (breach of implied warranty), New York Gen. Bus. Law § 349 (deceptive acts and practices), and New York Gen. Bus. Law § 350 (false advertising) (Docket Entry Nos. 90-94). However, her additional claims for implied warranties under the MMWA and New York U.C.C., express warranty under the New York U.C.C., and common law fraud are not appropriately resolved at this procedural juncture and have been reserved for trial (if needed).

Defendants simultaneously moved for summary judgment.[1]  They contend they may prevail on summary judgment because: (1) WWC made no express written warranties to Ms. Pyskaty; (2) the oral warranties given by WWC to Ms. Pyskaty should be disregarded; (3) WWC disclaimed any implied written warranties; (4) WWC's conduct does not affect the public at large; (5) WWC's conduct did not constitute false advertising; (6) Ms. Pyskaty cannot establish a common law fraud claim; and (7) Holder Rule liability does not apply.  As explained below as well as in Plaintiff's motion for summary judgment, each of these arguments is legally and

---

[1]     Defendants have each submitted a memorandum of law in support of their respective motions for summary judgment.  As the issues raised overlap, Plaintiff has submitted a single omnibus memorandum of 27 pages addressing the arguments of both Defendants.  Thus, although this memorandum exceeds the 25-page limit set forth in Part II(C)of Your Honor's Individual Practices, it is substantially shorter than the combined 50-page limit for two separate opposition memoranda.

factually erroneous.  Furthermore, genuine issues of material fact preclude summary disposition of the claims not presented as ripe for summary judgment by Ms. Pyskaty.

First, Defendants' contention that WWC created no written warranties in its sale of the Vehicle to Ms. Pyskaty is demonstrably false.  WWC advertised and represented the Vehicle to Ms. Pyskaty (as well as any consumer viewing the Vehicle at the dealership) as a Certified Pre-Owned ("CPO") automobile.  At the dealership lot, WWC adorned the Vehicle with labels indicating it was Certified Pre-Owned by BMW and thereby complied with the BMW Certified Pre-Owned BMW Vehicle Program ("CPO Program"), an unequivocal description of the goods. The Vehicle was sold to Plaintiff as CPO, including at a finance rate only then available for CPO vehicles.

Further, at the time of sale, WWC provided a written Buyers Guide to Ms. Pyskaty that stated two additional warranties applied to the Vehicle, a Limited Warranty provided by the dealer (i.e., WWC) and a Certified Pre-Owned Limited Warranty, which was only available for CPO vehicles.  Additionally, WWC also provided Plaintiff with a Certified Pre-Owned by BMW Vehicle Inspection Checklist ("VIC"), warranting not only the condition of certain parts and vehicle structures, but also the Vehicle's enrollment in the CPO Program as of October 10, 2013 and compliance with CPO Program requirements (including containing a non-disqualifying CARFAX vehicle history report).

These warranties contained false representations.  The Vehicle did not conform to the CPO Program specifications set forth in the Certified Pre-Owned by BMW Center Operations Manual dated March 2013 in effect at the time (the "CPO Manual") and WWC did not follow the CPO Program procedures set forth therein.  The violations of the CPO Program included the following:  WWC did not disqualify the Vehicle as ineligible for CPO despite a disqualifying

CARFAX report (which it presented to Ms. Pyskaty on October 31, 2013); WWC did not provide the required disclosures regarding existing damage to Ms. Pyskaty; and the Vehicle could not be represented as CPO because WWC did not fully complete the certification process by completing a Statement of Certification (itself which would constitute a false document) before marketing the Vehicle with the CPO designation.

Second, WWC created an oral warranty under New York law with regard to the condition and accident history of the Vehicle.  Ms. Pyskaty has offered consistent, unrebutted testimony that WWC's salesman represented to her that the Vehicle was "accident free," "perfect," had a "clean" CARFAX report (reflecting no prior accidents) and had been driven by himself and a manager and they determined it was a "good car."  *See, e g.,* Declaration of Maya Pyskaty in Support of Plaintiff's Motion for Summary Judgment dated August 3, 2018 ("Pyskaty Decl."), ¶¶12-17.  Defendants assert that the representations made by WWC were limited because the "clean" CARFAX was among the items he considered in concluding the Vehicle was accident free.  Defendants' selective construction of the representations made by WWC to Ms. Pyskaty notwithstanding, whether WWC created oral warranties as to the Vehicle's condition and accident history present genuine issues of material fact as the parties dispute what representations were made by WWC to Ms. Pyskaty and the import of those representations.

Third, Defendants' reliance on disclaimers to avoid their liability for implied warranties is pure sophistry.  The MMWA prohibits suppliers such as WWC from disclaiming implied warranties under either federal or state law.  *See* 15 U.S.C. § 2306(a) and (c).  To the extent a disclaimer is issued in violation of the MMWA, it is ineffective for the purposes of the MMWA *and* for the purposes of New York law.  *Id.*  Further, the document governing the sale of the Vehicle, the BMW Financial Services Motor Vehicle Retail Installment Contract – New York

("RIC"), manifestly affirmed that the transaction carried implied warranties.  The RIC explicitly stated, "If Seller extends, or the Vehicle's manufacturer extends, a written warranty or service contract covering the Vehicle within 90 days from the date of this Contract, I get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle."  Pyskaty Decl., Exhibit 2 §15(a).  Notably, the page in which this provision appears is conveniently omitted from both of the Defendants' appended versions of the RIC.

With regard to the Fourth, Fifth, and Sixth contentions, claims for deceptive acts and practices, false advertising and common law fraud, Defendants' arguments miss the mark. WWC falsely represented to Ms. Pyskaty (and any consumer walking onto the dealership lot) and in Internet advertising that the Vehicle was eligible for CPO certification and comported with CPO Program requirements.  Further, the process of CPO certification at WWC was replete with falsehoods.  WWC had an unqualified receptionist perform the vehicle history analysis, falsely represented that she was a Service Advisor in the VIC (and in hundreds of other VIC forms), never had its technician or anyone else review the Vehicle for prior accident damage and never disclosed such known damage to the purchaser (a requirement of the CPO program). Thus, the sale of the Vehicle to Ms. Pyskaty constituted a consumer and common law fraud utilizing false advertising that was likely to (and likely did in fact) recur.

Seventh, without any citation to it, Defendants appear to assert that BMW Bank is not subject to the Holder Rules promulgated by the FTC as well as contained within New York statutory and common law.  *See* 16 C.F.R. § 433.2; N.Y. Pers. Prop. Law § 302(9).  BMW Bank ignores the clear and conspicuous language in the RIC subjecting it to "all claims and defenses [Ms. Pyskaty] could assert against the seller of the goods or services . . . ."  Pyskaty Decl., Exhibit B, at 5 (Docket Entry No. 94-2).  It is well-settled that "[t]he Holder Rule and Personal

Property Law § 302(9) preserve consumer claims and defenses by mandating that any holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained." *Ramirez v. Nat'l Co-op. Bank*, 91 A.D.3d 204, 207 (1st Dep't 2011).

For the reasons set forth herein, Ms. Maya Pyskaty respectfully requests that the Court deny Defendants' motions for summary judgment and grant summary judgment in her favor.

## STATEMENT OF FACTS

The relevant factual history of this matter and evidence pertinent to the disposition of Defendants' motions for summary judgment are set forth in Plaintiff's Local Civil Rule 56.1 Statement of Uncontroverted Material Facts (Docket Entry No. 91), Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pyskaty MOL") (Docket Entry No. 92), Plaintiff's Local Civil Rule 56.1(b) Counter-Statement of Controverted Material Facts in Opposition to Wide World of Cars, LLC's Statement of Material Facts, and Plaintiff's Local Civil Rule 56.1(b) Counter-Statement of Controverted Material Facts in Opposition to BMW Bank of North America's Statement of Undisputed Material Facts.  As reflected in those documents, with certain exceptions, Ms. Pyskaty generally agrees with Defendants' undisputed facts.  Nevertheless, the facts and operative documents in this matter decisively militate against an award of summary judgment in favor of Defendants.

## PROCEDURAL POSTURE

Plaintiff commenced this action by filing a Complaint on March 4, 2015 (Docket Entry No. 1).  By written Consent to Jurisdiction by a U.S. Magistrate Judge, this matter was referred to the Hon. Judith C. McCarthy, U.S. Magistrate Judge (Docket Entry No. 11).  Following the filing of the Amended Complaint (Docket Entry No. 12), WWC moved to dismiss (Docket Entry

No. 16).   After briefing, the Court granted the motion to dismiss for lack of subject matter jurisdiction (Docket Entry No. 35).   Plaintiff appealed (Docket Entry No. 37) and the United States Court of Appeals for the Second Circuit reversed and remanded (Docket Entry No. 38).

Following remand (Docket Entry No. 40), the parties engaged in discovery, including paper discovery and depositions, as well as expert discovery.   Plaintiff moved for summary judgment on August 3, 2018 (Docket Entry Nos. 90-94).   At the same time, Defendants WWC and BMW also moved for summary judgment (Docket Entry Nos. 77-80 and 85-89).

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   The Court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003).   The party seeking summary judgment bears the burden of demonstrating to the Court the absence of any genuine factual dispute.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## ARGUMENT

**I. Express Written Warranties, Oral Warranties and Implied Warranties Apply to Plaintiff's Purchase of the Vehicle from WWC.**

> ### A. Defendants Created and Breached Express Written Warranties for the Vehicle Under the MMWA.

The Magnuson-Moss Warranty Act ("MMWA") grants relief to a consumer damaged by the failure of a warrantor to comply with any obligation under a written warranty.   *See Wilbur v.*

6

*Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).

Under the MMWA, the term "written warranty" is defined alternatively as:

> (A)  any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B)  any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6)(A).  Further, although the express warranty definitions in the MMWA may differ from state law (unlike implied warranties under the MMWA), violations of the MMWA rest on breaches of warranties defined under state law. 15 U.S.C. § 2301(6)-(7); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th Cir. 2009); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Courts have held that "the MMWA makes a warrantor directly liable to a consumer for breach of a written warranty," *Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (citing *Shuldman v. DaimlerChrysler Corp.,* 1 A.D.3d 343, 768 N.Y.S.2d 214, 216 (2003)), and that the MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages," *Ebin v. Kangadis Food Inc.,* No. 13 Civ. 3311, 2013 WL 3936193, at *3 n. 2 (S.D.N.Y. July 26, 2013).

As set forth in Plaintiff's motion for summary judgment, WWC provided Ms. Pyskaty with multiple express warranties under the MMWA and breached them.  *See* Pyskaty MOL, at 7-10; *compare Ventura v. Ford Motor Corp.*, 180 N.J. Super. 45, 61, 433 A.2d 801, 809 (App. Div. 1981) (holding, inter alia, multiple warranties may apply to auto dealerships under the MMWA). WWC provided a Buyers Guide to Ms. Pyskaty at the time of sale.  This written document

identified the Vehicle by VIN and had "X" notations marked next to "LIMITED WARRANTY"[2] and "CERTIFIED PRE-OWNED LIMITED WARRANTY." *See* Affirmation in Support of Summary Judgment Motion by Keith V. LaRose dated August 2, 2018 ("LaRose Aff.), Exhibit F (Docket Entry No. 79-6). This latter notation confirmed that the Vehicle was covered by the CPO Program and certified according to the CPO Manual. CPO certification provides an express warranty based upon state law and its breach also provides a claim under the MMWA. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015).

As part of the certification process under the CPO Program, WWC also created an additional express warranty insofar as it completed the VIC for the Vehicle. LaRose Aff., Exhibit W (Docket Entry No. 79-28). Checklists like this are considered warranties under the MMWA and New York law. *See, e.g., Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 519 (3d Dep't 1984) (pre-delivery inspection form held to be a "warranty" under the MMWA); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193 (3d Dep't 1992) (same).

There can be no dispute that WWC sold the Vehicle to Ms. Pyskaty and that WWC presented the Vehicle to her as CPO certified with a CPO warranty (as well as an additional Limited Warranty). There is no dispute that WWC prepared the VIC in connection with the certification of the Vehicle and represented to Ms. Pyskaty that it met all CPO requirements. Further, Ms. Pyskaty testified that she relied on the WWC's representation that the Vehicle passed the CPO inspection and certification process. LaRose Aff., Exhibit H (Deposition of Maya Pyskaty taken June 29, 2017) (hereinafter, "Pyskaty"): 26:18-27:20.

---

[2]   As applicable, the Limited Warranty states: "The **dealer** will pay 100% of the labor and 100% of the parts for the covered systems that fail during the warranty period." LaRose Aff., Exhibit F, at 1 (emphasis added). It then indicates as follows for "SYSTEMS COVERED[:]" Engine; Transmission; Drive Axle; Brakes; Radiator; Steering; Alternator; Generator; Starter; Ignition System (excluding battery). The dealer is identified as "WIDE WORLD OF CARS" and the reader is directed to the "GENERAL MANAGER" to "SEE FOR COMPLAINTS." LaRose Aff., Exhibit F, at 2.

Despite its representations to Ms. Pyskaty, WWC breached multiple provisions of the CPO Program.  It presented the Vehicle as CPO, but it was not eligible for the CPO Program because of its prior commercial usage.  Declaration of Evan S. Rothfarb in Support of Plaintiff's Motion for Summary Judgment dated August 3, 2018 ("Rothfarb Decl."), Exhibit J-11, at 5 and Exhibit J-21, at 2 (Docket Entry No. 93-11 [also available at 93-12]).  WWC was aware of the prior commercial use when it sold the Vehicle to Ms. Pyskaty as the first purchaser's commercial use was clearly indicated in the CARFAX report generated by WWC that was furnished to Ms. Pyskaty.  Rothfarb Decl., Exhibit J-21, at 2.  Moreover, WWC did not even complete the CPO certification process until nearly a year after Ms. Pyskaty purchased the Vehicle and was specifically prohibited from representing the Vehicle as CPO until that process was complete (i.e., there was no Statement of Certification provided to Ms. Pyskaty and it was not completed until October 16, 2014).  Rothfarb Decl., Exhibit J-11, at 7 and 11; Exhibit J-13.

Even more glaringly, WWC did not provide Ms. Pyskaty with the disclosures of prior damage for the Vehicle required under the Pre-Owned Vehicle Disclosure Notice.  Rothfarb Decl., Exhibit J-11, at 19.  This section required WWC to disclose "previous paint and body damage repairs . . . or any other such relevant information available to the selling center."  *Id.* Further, the accompanying VIC for the Vehicle misrepresented its origin as BMW-FS Off Lease (which was not true), misrepresented the competency and position of the individual completing Section 1 of the VIC, and misrepresented the CARFAX report as non-disqualifying.  *See* Rothfarb Decl., Exhibit J-23, at 1 and 5.

"Representing a vehicle which does not meet Program Standards and Guidelines as CPO, including but not limited to: . . . Any criteria for Program disqualification as outlined in CPO Operations Manual . . . [and] Failure to follow and fulfill BMW Group Disclosure Policy" are

defined as "Improper Reconditioning" in the CPO Manual.  Rothfarb Decl., Exhibit J-11, at 22.
If an ineligible vehicle is enrolled in the CPO Program, the "Center must advise the customer(s)
in writing that the sale as a Certified Program vehicle was incorrect and take whatever steps
necessary to satisfy the customer, including repurchase."  Rothfarb Decl., Exhibit J-11, at 23.

Defendants attempt to escape liability for these breaches by arguing that the only
warranty applicable to the Vehicle is one issued by BMW of North America, LLC ("BMW NA
Warranty").  However, Defendants have not attached a copy of the BMW NA Warranty to either
motion for summary judgment and have not pointed to any evidence that such warranty was
provided to Ms. Pyskaty prior to or at the time of Vehicle sale.  This latter failure to disclose
itself constitutes a violation of the MMWA and the FTC's implementing regulations.  *See* 15
U.S.C. § 2302(a); 16 C.F.R. § 701.3.  Furthermore, the written warranties issued by WWC to
Ms. Pyskaty indicate that it is the "dealer" that is providing coverage and the party to whom
complaints regarding warranties should be addressed.  *See* LaRose Aff., Exhibit F, at 1-2.  That
dealer is specifically identified as WWC.  *Id.*  Moreover, there is no dispute that the VIC was
fully completed by WWC, not by BMW NA, and is thus the warrantor.  *See* Rothfarb Decl.,
Exhibit J-23, at 1 and 5.

The issue in this litigation has always been Defendants' "written affirmation of fact
related to the condition of the condition of the vehicle and the nature and quality of the
workmanship of its technicians and participating dealerships" under Defendants' "advertised
CPO program."  Amended Complaint, ¶120.  Over the course of Ms. Pyskaty's ownership, it
became clear that the Vehicle did not meet CPO requirements.  This litigation has only further
demonstrated the correctness of her position as the Vehicle suffered from "significant defects in
its condition . . . ." related to CPO Program compliance, including the fact the Vehicle was not

eligible for CPO certification, was not certified until a year after sale, and did not include required damage disclosures.  *See* Amended Complaint, ¶121.

Accordingly, Defendants created and breached express written warranties under the MMWA.  Summary judgment should be granted in favor of Plaintiff and denied for Defendants.

### B. Defendants Created and Breached Written and Oral Warranties for the Vehicle Under New York Law.

Section 2-313 of the New York Uniform Commercial Code relates to express warranties made by a seller of goods to a buyer.  It provides as follows:

> (1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> >
> > (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

N.Y. U.C.C. § 2-313.

An express warranty by description of the goods arises from any description of the goods which can reasonably be considered to have any role in the overall bargain of the parties.  *See Barouh Eaton Allen Corp. v. Cillco, Inc.*, No. 06-CV-1820 DLI/KAM, 2008 WL 465493 (E.D.N.Y. Feb. 15, 2008) (citing N.Y. U.C.C. § 2-313(b) ("Any description of the goods which

is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.")); *see also Harburger v. Stern Bros.*, 189 N.Y.S. 74, 75 (App. Term, 1st Dep't 1921) ("No particular phraseology is necessary; but there must be an express and direct affirmation of the [k]ind, character, or description of the goods upon which the purchaser relies.").

In order to prevail for breach of an express warranty, a plaintiff must establish that there was an affirmation of fact or a promise by the seller the natural tendency of which was to induce the buyer to purchase. *See Anderson v. Bungee International Manufacturing Corp.,* 44 F.Supp.2d 534, 541 (S.D.N.Y. 1999). "Such an affirmation of fact must be distinguished from puffery." *Id.* Generalized statements and exaggerated claims made by a seller about a product, which a reasonable consumer would not rely upon as a statement of fact, do not create an express warranty. However, where the seller makes representations of fact about specific characteristics of the product, which were relied upon by the buyer as part of the basis of the bargain, an express warranty is created. *See, e.g., Kates Millinery, LTD., v. Benay-Albee Corp.,* 114 Misc. 2d 230 (N.Y. Civ. Ct. 1982), *aff'd* 120 Misc. 2d 429 (App. Term, 2d and 11th Districts 1983).

WWC made representations to Ms. Pyskaty concerning the condition and CPO qualifications of the Vehicle that it communicated prior to and during the sale/purchase. Ms. Pyskaty reasonably relied upon these representations as part of the basis of the bargain, thus constituting express warranties under NY U.C.C. § 2-313. Additionally, WWC represented that the Vehicle was CPO in written instruments, including though labels affixed to the Vehicle. *Compare In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) (holding the term "All Natural" on a label was

sufficient to create an express warranty under New York law). These representations constitute express warranties.

Furthermore, WWC created oral warranties under New York law with regard to the condition and accident history of the Vehicle. A salesman at WWC, Moon Hasan, represented to Ms. Pyskaty that the Vehicle was "accident free," "perfect," had a "clean" CARFAX report (reflecting no prior accidents), and had been driven by himself (Mr. Hasan) and a manager named "Joey" and they had both determined it was a "good car." *See* Pyskaty Decl., ¶¶12-17; LaRose Aff., Exhibit H (Deposition of Maya Pyskaty taken June 29, 2017) (hereinafter, "Pyskaty"): 33:3-34:2.

Defendants assert that the representations made by Mr. Hasan to Ms. Pyskaty should be construed as limited because the "clean" CARFAX was among the items he considered in concluding and representing that the Vehicle was accident free. Defendants selectively construe Mr. Hasan's statements as if he only passively re-affirmed the content of the CARFAX report. In fact, he made an independent conclusion as to the Vehicle's accident history and condition (without consulting WWC's technical experts) based on his own evaluation of the Vehicle and a CARFAX he obtained through WWC's account. He then shared his conclusion of the Vehicle's accident history and status with Ms. Pyskaty. Thus, WWC (acting through Mr. Hasan) created oral warranties as to the Vehicle's condition and accident history. Nevertheless, whether WWC created oral warranties as to the Vehicle's condition and accident history present genuine issues of material fact as the parties dispute what representations were made by WWC to Ms. Pyskaty and the import of those representations.

Accordingly, Plaintiff's motion for summary judgment should be granted with regard to the express written warranties and Defendants' motion for summary judgment should be denied with respect to the oral warranties created by WWC.

### C. Defendants Breached the Implied Warranty of Merchantability Under the MMWA and New York Law.

An implied warranty within the meaning of the MMWA is "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2306(7). This definition encompasses state warranty law, including the implied warranty of merchantability. *See, e.g., Universal Motors, Inc. v. Waldock*, 719 P.2d 254 (Alaska 1986); *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456 (Ga. Ct. App. 2004).

As set forth in New York law (and as incorporated by the MMWA into federal law):

Goods to be merchantable must be at least such as
  (a)  pass without objection in the trade under the contract description; and
  (b)  in the case of fungible goods, are of fair average quality within the description; and
  (c)  are fit for the ordinary purposes for which such goods are used; and
  (d)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
  (e)  are adequately contained, packaged, and labeled as the agreement may require; and
  (f)  conform to the promises or affirmations of fact made on the container or label if any.

N.Y. U.C.C. § 2-314. Further, any defects in a vehicle, known at the time of sale, constitute breaches of the implied warranty of merchantability. *See Diaz v. Your Favorite Auto RPR & DI*, 2012 NY Misc. LEXIS 2574 (Civ. Ct. City of New York, Kings County, May 29, 2012).

Ms. Pyskaty's motion for summary judgment seeks an award based on subsections (a), (c) and (f) under both the MMWA and New York law. *See* Pyskaty MOL, at 11-12. She asserts that the Vehicle did not conform with its descriptive label, namely that it designated an automobile as CPO which did not comport with the CPO Program and CPO Manual, was unfit

for its ordinary purpose (i.e., a CPO Vehicle), and would not pass without objection in the trade. *Id.*; *see also Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 216 (E.D.N.Y. 2004) (counterfeit medications that do not conform to the prescription or their labels are not fit for their ordinary purposes); *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 829 F. Supp. 35, 40 (E.D.N.Y. 1993) (non-conforming counterfeit perfume does not conform to the promises or affirmations of fact made on containers or labels). At the time of sale, all CARFAX reports in WWC's possession (as well as the CARFAX report provided to Ms. Pyskaty) reflected prior commercial use of the Vehicle, thereby disqualifying the Vehicle from certification as CPO. Further, at the time of sale, the Vehicle had not completed the CPO process, WWC did not provide disclosures regarding previous paint and body repair, and the Vehicle was improperly reconditioned as defined in the CPO Manual.

However, Ms. Pyskaty's claims for breach of the implied warranty of merchantability are not limited to the descriptive label. She has submitted evidence of repeated complaints and expressed concerns regarding the condition of the Vehicle, including its safety and performance of the Vehicle. *See, e.g.,* Pyskaty Decl., ¶¶26-31. She has also documentary evidence reflecting at least one prior collision and has provided an expert report that concludes the Vehicle was a "non drivable . . . severely worn rebuilt wrecked vehicle that is not fit for the purpose it was intended." Pyskaty Decl., Exhibit G (Docket Entry No. 94-7); LaRose Aff., Exhibit M, at 6. Further, Ms. Pyskaty's and Defendants' own experts alike have confirmed the Vehicle exhibits signs of prior collisions, poor body work, and poor non-factory re-painting apparent upon inspection. Rothfarb Decl., ¶22, Exhibit M and Exhibit N (collectively, "Grismer Report"); Rothfarb Decl., ¶20 and Exhibit L ("Saliani Report"); Rothfarb Decl., ¶19 and Exhibit K ("Jackson Report"); Rothfarb Decl., Exhibit G (Deposition of Michael Jackson dated April 12,

2018): 162:23-163:12.   This evidence supports Plaintiff's claims for breach of the implied warranty of merchantability pursuant to subsections (a) and (c) of N.Y. U.C.C. § 2-314 with regard to the condition of the Vehicle.

In contrast, Defendants contend the Vehicle was sold to Ms. Pyskaty in good working order and Ms. Pyskaty's complaints were the result of her own misuse of the Vehicle.   This juxtaposition presents a clear factual disagreement requiring resolution by the finder of fact.

Accordingly, Plaintiff's motion for summary judgment should be granted as to the implied warranty of merchantability based on descriptive labeling, but genuine issues of material fact preclude an award of summary judgment with regard to subsections (a) and (c) of N.Y. U.C.C. § 2-314 as to condition of the Vehicle at the time of purchase.

## II.   The Disclaimers Relied Upon by Defendants Do Not Apply to Plaintiff's Claims.

### A.   *The Vehicle Sale Transaction Was Governed by the Magnuson Moss Consumer Warranty Act Which Specifically Renders All Disclaimers as to Implied Warranties Ineffective.*

As a matter of both federal and state law, the implied warranty of merchantability may not be disclaimed.  The MMWA explicitly states as follows:

> **(a) Restrictions on disclaimers or modifications**
> No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.
> * * *
> **(c) Effectiveness of disclaimers, modifications, or limitations**
> *A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.*

15 U.S.C. § 2308 (emphasis added).  The Second Circuit has reaffirmed this principle, remarking that under the MMWA, "[a] seller is thus still free to offer a relatively worthless written

warranty, 15 U.S.C. § 2303(a)(2), but by doing so is barred from disclaiming implied warranties arising under state law." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 248 (2d Cir. 1986); *see also Cannon v. Newmar Corp.*, 287 F. Supp. 2d 222, 226 (W.D.N.Y. 2003) (holding the MMWA does not create new implied warranties, but refers to those arising under state law).

Accordingly, under the explicit terms of the MMWA, as a matter of both federal and state law, the disclaimers relied upon by Defendants to nullify the implied warranty of merchantability on the Vehicle are invalid and unenforceable.

### B.  The Retail Installment Contract and New York Contract Law Render the Disclaimers of Implied Warranties Ineffective.

In addition to the prohibition imposed by the MMWA on disclaimers of implied warranties (invaliding all such attempts to disclaim implied warranties), the express terms of the RIC provide Ms. Pyskaty with written confirmation of her implied warranties.  Specifically, the RIC provided to Ms. Pyskaty provides as follows:

> **WARRANTIES AND VEHICLE USE**
>
> A. WARRANTIES. Seller is not offering any express warranties unless Seller has given a written warranty to me. **If Seller extends, or the Vehicle's manufacturer extends, a written warranty or service contract covering the Vehicle within 90 days from the date of this Contract, I get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle.** If not, Seller specifically disclaims any implied warranties of merchantability and fitness for a particular purpose covering the Vehicle, unless the Vehicle is a second-hand motor vehicle sold in New York City.

Pyskaty Decl., Exhibit B, § 15 (emphasis added) (Docket Entry No. 94-2).

There is no dispute that WWC provided Ms. Pyskaty with written warranties with the Vehicle.  The above language in the RIC makes clear that WWC expressly provided Ms. Pyskaty with implied warranties on her Vehicle as well.

To the extent Defendants rely upon disclaimers contained in other documents such as the Buyer/Lessee Delivery Acknowledgment (LaRose Aff., Exhibit E), Purchase Order (Declaration of Karen Schnur, Esq. in Support of BMW Bank's Motion, Exhibit C, ¶8) or various CARFAX reports, such disclaimers are ineffective as inconsistent with the RIC and properly construed against the drafter of an adhesion agreement. *See Borman's, Inc. v. Olympic Mills, Inc.*, No. 91 CIV. 4244 (LJF), 1993 WL 190344, at *5 (S.D.N.Y. June 2, 1993) (holding "if an express warranty and a disclaimer cannot be read consistently the negation or limitation of the warranty is inoperative.") (internal citations, quotations and alterations omitted); *Giarratano v. Midas Muffler*, 630 N.Y.S.2d 656, 660 (N.Y. City Ct., Westchester Cty. 1995) (when muffler shop warranty contained conflicting clauses, warranty would be construed to protect buyer); *Stream v. Sportscar Salon, Ltd.*, 397 N.Y.S.2d 677, 680-81 (N.Y. Civ. Ct., Queens Cty. 1977) (any ambiguity must be construed against seller who drafted form; disclaimer ineffective when bill of sale recited warranties); *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000) ("Under New York law, equivocal contract provisions are generally to be construed against the drafter."); *Laidlaw Transp., Inc. v. Helena Chem. Co.*, 255 A.D.2d 869, 870 (4th Dep't 1998) (disclaimer on delivery ticket ineffective because delivered after sale consummated).

Accordingly, the disclaimers relied upon by Defendants to nullify the implied warranty of merchantability on the Vehicle are invalid and unenforceable.

### III. Defenses Deceptive Acts and Practices, Including False Advertising, Subject It Liability Under New York Gen. Bus. Law §§ 349 and 350.

New York Gen. Bus. Law § 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commence or in the furnishing of any service in [the State of New York]." GBL § 349 "is a broad, remedial, consumer-oriented statute" that

applies "to virtually all economic activity" and provides a private remedy to individuals. *Oswego Laborers' Local 214 Pension Fund et al. v. Marine Midland Bank,* 85 N.Y.2d 20, 24 (1995); *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999).

Similarly, New York Gen. Bus. Law § 350 ("GBL § 350") prohibits the promulgation of "false advertising in the conduct of any business, trade or commence or the furnishing of any service" in the State of New York. False advertising is defined as that which is "misleading in a material respect." GBL § 350(a)[1].

Both GBL § 349 and GBL § 350 "on their face apply to virtually all economic activity," and their application in the courts has been correspondingly broad. *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999); *see, e.g.*, *Perez v. Hempstead Motor Sales,* 173 Misc.2d 710, *aff'd* 176 Misc.2d 314 (Dist. Ct., Nassau Cty. 1997) (automotive dealer); *Baker v. Burlington Coat Factory Warehouse,* 175 Misc.2d 951 (City Ct., Yonkers 1998) (clothing retailer).

To assert claims under GBL § 349 or GBL § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (quoting *City of New York v. Smoke-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009)). Further, where liability is premised on a failure to disclosure, "a plaintiff must plausibly allege that "(1) a business alone possessed material information that is relevant to the consumer; and (2) it failed to provide this information." *Kommer v. Ford Motor Co.*, No. 117CV0296LEKDJS, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018)

"Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct." *Laborers' Local 214 Pension*

*Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Rather, "[Section] 349 liability attaches primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated buyers." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs.*, Inc., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004). Moreover, generalized disclaimers are insufficient to bar liability under these consumer protection statutes, especially where knowledge regarding the good or service is uniquely in the hands of the defrauding party. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d at 941 ("disclaimers set forth in defendants' catalogs do not . . . establish a defense as a matter of law[.]"); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 345 (1999) (holding a disclaimer was insufficient to bar consumer claims when vanishing premiums was the centerpiece of the service for sale).

Defendants wholly ignore WWC's deceptive conduct and false representations and their likelihood of recurrence. The evidence adduced in discovery reflects that WWC engaged in deceptive consumer-oriented conduct by falsely advertising and otherwise representing the Vehicle as qualified as CPO and implementing and carrying out a deficient CPO Program that did not accord with the CPO Manual.

Ms. Pyskaty purchased a Vehicle advertised as CPO, including with labels affirming its CPO status. However, the Vehicle was not eligible for the CPO Program because of its documented prior commercial use and disqualifying CARFAX report. Nevertheless, WWC held the Vehicle out to the consuming public as CPO even before any inspection process had taken place and nearly a year before the CPO process had been completed through completion of a signed Statement of Certification. Moreover, when the Vehicle was sold to Ms. Pyskaty, despite the explicit CPO Manual requirements, WWC did not provide Ms. Pyskaty with the required Statement of Certification, copy of the VIC (which itself contained falsehoods), or a required

Pre-Owned Vehicle Disclosure Notice (which would have indicated the prior accident damage sustained by the Vehicle). The Vehicle was improperly reconditioned as defined in the CPO Manual, which provided Ms. Pyskaty with a right to demand that WWC repurchase the Vehicle, which it did not honor.

After Ms. Pyskaty struggled for months to correct the defective performance of the Vehicle, including multiple features affecting the safety of the Vehicle, WWC provided her with the VIC for her Vehicle. The VIC for the Vehicle contained multiple falsehoods: (1) it misrepresented the source of the vehicle as BMW FS Off-Lease (when the Vehicle most recently had been purchased from another auto dealer and prior to that from an auction); and (2) it stated that the Vehicle did not have a disqualifying CARFAX or AutoCheck report (which was not true—the CARFAX report provided to Ms. Pyskaty dated October 31, 2013 was in fact, disqualifying, as were each of the previously CARFAX reports generated by WWC and retained in its files dated October 7, 2013 and October 10, 2013).

Moreover, a WWC receptionist signed the VIC as the Service Advisor and had fully completed Section 1 of the VIC, although she was not qualified to determine whether the Vehicle history disqualified it from certification as CPO. Additionally, the technician who completed the VIC for the Vehicle did not inspect it for prior accident damage (beyond the categories in the VIC) and did not provide the required Pre-Owned Vehicle Disclosure Notice set forth in the CPO Manual, although he was qualified to make such assessments.

The discovery adduced from WWC reflects that Ms. Pyskaty's experience was far from an isolated incident. WWC is a BMW dealership that sold approximately 2,700 vehicles in the year 2013, approximately 200 of which were designated as CPO units sold to consumers using the same deceptive practices.

In certifying vehicles as CPO, WWC used a defective process. It regularly utilized the same receptionist who signed the VIC for Ms. Pyskaty's Vehicle, holding her out as a Service Advisor in each VIC, but who lacked the requisite training to complete the Service Advisor section of the VIC pertaining to vehicle history. Further, in at least twelve other instances, the technician inspecting the vehicles for CPO purposes limited the scope of the inspection to the VIC, never alerting anyone at WWC or the eventual purchaser whether the purportedly CPO vehicles had prior accident damage required to be disclosed under the Pre-Owned Vehicle Disclosure Notice policy of the CPO Manual. In fact, WWC had no protocol whatsoever with regard to making required disclosures regarding accident damage despite the explicit full damage disclosure policy set forth in the CPO Manual.

Accordingly, the undisputed facts establish that Ms. Pyskaty has meritorious claims under GBL § 349 (deceptive acts and practices) and GBL § 350 (false advertising).

### IV. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Common Law Fraud Claim.

The same factual predicates that support the GBL § 349 and GBL § 350 also support a common law fraud claim. Although it is well-settled that "[a]lleged wrongdoing that merely constitutes a breach of contract cannot constitute fraud. . . .[,] where a party makes misrepresentations to induce the other party to enter a contract, the fraud claim is sustained." *Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 26 (2d Cir. 2014), as amended (Jan. 30, 2014).

"The essential elements of a cause of action for fraud are representation of a material existing fact, falsity, *scienter,* deception and injury[.]" *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). "As the New York Court of Appeals noted, '[A] reckless misstatement or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth . . . [or] . . . a refusal to see the obvious, a failure to investigate the doubtful, if

sufficiently gross, . . .' may take the place of actual knowledge as the requisite scienter for a claim of fraud." *Diamond Energy, Inc. v. Carbon/Graphite Grp., Inc.*, No. 89-CV-910S, 1992 WL 225554, at \*4 (W.D.N.Y. Aug. 11, 1992) (citing *State Street Trust Co. v. Ernst*, 278 N.Y. 104, 112 (1938)).

WWC represented and sold the Vehicle to Ms. Pyskaty as CPO when it did not qualify for the CPO Program.  WWC's designation of the Vehicle as CPO reflected that it met CPO Program requirements and the certification process comported with all strictures of the CPO Manual (including an accurately completed VIC and disclosure of prior accident damage). WWC also represented that the Vehicle was "accident free," "perfect" and a "good car."  Thus, WWC used deception by affirmation and omission to induce Ms. Pyskaty's purchase of the Vehicle.  However, WWC's intention to induce reliance is not readily susceptible to summary judgment. *See Banque Nationale de Paris v. Prudential Sec., Inc.*, No. 95 CIV. 0990 (DC), 1997 WL 639257, at \*2 (S.D.N.Y. Oct. 16, 1997) ("Nonetheless, findings as to fraudulent intent are peculiarly fact-intensive and an affirmative finding can rarely be made as a matter of law.") (internal citations, quotations, and alterations omitted).

Similarly, Ms. Pyskaty justifiably relied on WWC's representations regarding the condition of the Vehicle, including its status as accident free and CPO.  Whether this reliance was reasonable is also a jury question. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp.2d 478, 484-85 (S.D.N.Y. 2012) (because evaluation of the reasonable reliance element requires consideration of many factors, it is often a question of fact for the jury rather than a question of law for the court).

Thus, although there can be no genuine dispute regarding whether WWC made false representations regarding the Vehicle, including its status as accident free and CPO, and thereby

induced Ms. Pyskaty's purchase, genuine issues of material fact preclude an award of summary judgment on the common law fraud claim.

## V. BMW Bank Is Liable for Wide World of Cars, LLC's Misconduct Pursuant to the FTC Holder Rule and New York State Holder Rule.

BMW Bank is the current holder of the RIC and is thus liable for the misconduct by the seller under federal, state and common law. *See* 16 C.F.R. 433.2 (the FTC "Holder Rule"); N.Y. Personal Property Law § 302(9) (state law version of the Holder Rule); *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975).

The FTC Holder Rule and New York State Holder Rule protect consumers when merchants sell a consumer's credit contracts to other lenders. *See* 16 C.F.R. Part 433; N.Y. Personal Property Law § 302(9). Specifically, the rules preserve consumers' rights to assert the same legal claims and defenses against anyone who purchases the credit contract, as they would have against the seller who originally provided the credit. *Id.*; *see also Ramirez v National Coop. Bank (NCB)*, 91 A.D.3d 204, 207 (1st Dep't 2011) ("The Holder Rule and Personal Property Law § 302 (9) preserve consumer claims and defenses by mandating that any holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained)(internal quotations omitted).[3]  Indeed, where an assignee engages in misconduct in its own right, there is direct liability and holder liability becomes superfluous.

In promulgating the Holder Rule, as authorized by Congress, the FTC specifically intended to preserve a consumer's claims and defenses so that they could be asserted against the

---

[3]      As the FTC has stated, the Holder Rule "is designed to prevent the widespread use of credit terms which compel consumers to pay a creditor even if the seller's conduct would not entitle the seller to be paid."  41 FR 20,022 (1976).  That is, the FTC Holder Rule specifically "cuts off a creditor's rights as a holder in due course." *Alduridi v. Community Trust Bank, N.A.*, 1999 Tenn. App. LEXIS 718, *8 (Tenn. Ct. App. Oct. 26, 1999).

holder in due course of a loan obligation, even though the holder may not have been a party to any false or deceptive actions taken by the selling dealership, hence the full title of the rule: Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses (The Holder Rule). 16 C.F.R. §§ 433, *et seq.*; *see also* FTC Staff Guidelines on Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses, May 4, 1976, p. 1-2, at https://www.ftc.gov/system/files/documents/rules/holder-rule/760504hidcrule.pdf; 40 Fed. Reg. 53506, 53507 (Nov. 18, 1975) ("The rule is directed at what the Commission believes to be an anomaly. . . . The creditor may assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale."). [4]

The FTC Holder Rule Notice conspicuously appears on the face of the RIC and states:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE SELLER.

Pyskaty Decl., Exhibit B, at 5. At the point of assignment from WWC, it was made manifest that BMW Bank accept the RIC subject to all the provisions of the Holder Rule. BMW Bank accepted the assignment and has received, kept, and retained payments from Ms. Pyskaty ever since.

Notwithstanding the above, Ms. Pyskaty concedes that FTC Holder Rule liability may not attach to BMW Bank with respect to express written warranties under the MMWA. *See* 15

---

[4]     Even absent the FTC Holder Rule and Personal Property Law § 302(9), both designed specifically to apply to consumer auto financing transactions, BMW Bank would be liable pursuant to N.Y. General Obligations Law § 13-105 (providing that where a claim or demand is transferred, the assignee takes possession "subject to any defense or counter-claim existing against transferrer"). *See also Northern Properties, Inc. v. Kuf Realty Corp.*, 30 Misc. 2d 1, 3 (Westchester 1961) ("it is now beyond dispute than an assignee takes subject to all defenses or counterclaims which the mortgagor possessed against the assignor[.]").

U.S.C. § 2310(f).  In *Pierre v. Planet Automotive, Inc.*, 193 F. Supp. 3d 157, 175 (E.D.N.Y. 2016), the court dismissed a consumer's MMWA claims (but not the consumer's other claims against an assignee) based on the portion of Section 2310(f) that states that "only the warrantor [who] actually . . . created a written warranty . . . and no other person." *Id.* at 75.  In light of this provision, the court held that "section 2310(f) of the MMWA trumps the [FTC] Holder Rule and expressly prohibits" an MMWA action against an assignee who did not create the written warranty. *Id.*

Although there is some authority for the proposition that the FTC Holder Rule provides for assignee liability in MMWA actions arising under consumer credit agreements irrespective of Section 2310(f), *see, e.g., Dees v. Bob O'Connor Ford, Inc.*, No. 94 C 7083, 1995 WL 441629, at *3 (N.D. Ill. July 20, 1995), Ms. Pyskaty concedes for purpose of this action that Section 2310(f) bars the MMWA written warranty claims as against BMW Bank.

Nevertheless, by its plain language, Section 2310(f) only applies to written, not implied, warranties.  Specifically, Section 2310(f) states as follows:

> For purposes of this section, only the warrantor actually *making a written affirmation of fact, promise, or undertaking* shall be deemed to have created a *written warranty*, and any rights arising *thereunder* may be enforced under this section only against such warrantor and no other person.

15 U.S.C. § 2310(f) (emphasis added).

Section 2310(f)'s emphasis on only written warranties is particularly striking when compared numerous other MMWA provisions which, in contrast, explicitly apply to both written and implied warranties.  *See, e.g.*, 15 U.S.C. § 2310(d)(1) (proscribing damages for claims arising "under a *written warranty, implied warranty*, or service contract") (emphasis added); 15

U.S.C. § 2310(e) (applying class action rules to claims arising under "*written or implied warranty or service contract*") (emphasis added).

Congress knew how to write an MMWA provision to include both written and implied warranties when it intended to do so.  *United States v. Shellef*, 756 F. Supp. 2d 280, 295 (E.D.N.Y. 2011) ("[I]t is clear from other provisions within the same statute that Congress knew how to include such language if it so wished.").  However, Congress did not do so with regard to Section 2310(f), which, on its face, sets forth limitations only with regard to written warranty claims.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."); *Sheridan v. Fleetwood Motor Homes of Indiana, Inc.*, 2011 WL 13124453, at *4-5 (C.D. Cal. Aug. 11, 2011) (permitting assignee to be held liable under the MMWA for violation of an implied warranty); National Consumer Law Center, Consumer Warranty Law [5th] § 2.2.5.4 ("It is important to note what [Section 2310(f)] does not say.  Because by its very terms it is limited to written warranties, a consumer can certainly bring a Magnuson-Moss claim against an assignee or related lender, as long as that claim is not based on the enforcement of a written warranty. Examples of claims not based on a written warranty are claims for breach of an implied warranty. . .  [.]).[5]

Accordingly, even to the extent BMW Bank may have limited liability for the express warranty claims under the MMWA, BMW Bank remains liable for implied warranty claims under the MMWA, New York UCC express and implied warranty claims, New York Gen. Bus. Law §§ 349 and 350 claims, and common law fraud.

---

[5]     The application of Section 2310(f) to implied vs. written warranty claims against an assignee was not briefed in *Pierre*, which dismissed the MMWA claim against the assignee *sua sponte*.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff Maya Pyskaty respectfully requests that this Honorable Court deny Defendants' motions for summary judgment and grant Plaintiff's motion for summary judgment in this action pursuant to Fed. R. Civ. P. 56.

Dated: August 31, 2018
      New York, New York

                       Respectfully Submitted,

                       */s/ Evan S. Rothfarb*
                       Evan S. Rothfarb
                       Daniel A. Schlanger
                       SCHLANGER LAW GROUP LLP
                       9 East 40th St., Suite 1300
                       New York, NY 10016
                       T: (212) 500-6114
                       F: (646) 612-7996
                       erothfarb@consumerprotection.net
                       dschlanger@consumerprotection.net

                       *Attorneys for Plaintiff*